CO-OPERATIVE SALES COMPANY et al., Appellees, v. MRS. TEUNIS VAN DER BEEK et al., Appellants.

No. 42805.

MARCH 5, 1935.

REHEARING DENIED JUNE 21, 1935.

Shangle & Legoe, for appellants.

McGoy & McCoy, for appellees.

PARSONS, J.—The petition in this case sets forth that the plaintiff is a commission company located at Eddyville, Iowa, and that

Frank C. Reed and C. C. Powell are the owners of said company, and claim to recover against the defendants for hogs and cattle sold defendants for the agreed price of $217.90, upon which $50 has been paid, and asks a judgment for $167.90. The answer generally denies each and every allegation of the petition; admits the cooperative company is a sales company and is owned by Frank C. Reed and C. C. Powell, and by further answer and counterclaim they allege the property was sold to them March 2, 1933, and was struck off to the defendant Teunis Van der Beek as highest bidder by Frank C. Reed as auctioneer; admits the price at which sold; and further alleges that Reed, acting as auctioneer and as agent for the plaintiff, stated publicly as a fact: "These hogs are from just over the river and are doubly vaccinated", and then alleges what was meant by that, and that relying upon these statements Teunis Van der Beek bought the hogs; and sets forth further that, had the hogs been as represented and warranted, they would have been worth the price of $108.90, and further alleges that, instead of being doubly vaccinated and cholera immune, they had not been vaccinated and were then infected with the germs of hog cholera; set forth how the hogs died shortly after the sale and the loss of several of the hogs of Teunis Van der Beek by reason of being mixed with the hogs purchased. The plaintiffs filed an answer to the counterclaim admitting that they were the owners of the plaintiff Co-operative Sales Company and that they were employed to sell at public auction 18 hogs belonging to Feeback and Chilton and 9 hogs belonging to Cameron, and that they sold the hogs at that sale; and alleging that, under the publicly announced terms and conditions under which the hogs and cattle were to be sold, they posted notice in which one of the conditions was they were not responsible for any misrepresentations of any kind. An amendment to the petition alleges the hogs belonged to Feeback and Chilton, and 9 to Cameron, and in making said sales the plaintiffs were acting as commission agents and agents for the owners. Mr. Reed testified on direct examination that they sold the cattle and hogs to Mrs. Teunis Van der Beek.

On cross-examination he testified plaintiffs made settlement with the owners of the live stock the day of the sale, knowing they had made the statement to the crowd that the hogs were doubly vaccinated; that a representative of the sales company made such a statement to the crowd, and he testified as to the 18 hogs belonging to Mr. Feeback and that it was announced they were doubly vaccinated;

that he sold 9 other hogs for Mr. Cameron, and Cameron announced they were not vaccinated; and that then he so announced it.

On further cross-examination he testified that there were from two to three or four hundred people at the sale; that he did not know of anybody who bid on the hogs except Teunis Van der Beek, and said in response to the questions asked, "You saw Teunis Van der Beek there at the time the hogs were sold, and you struck the hogs off on his bid?" He answered, "Yes, sir." He was then asked, "Did you not see Mrs Van der Beek there?" Answer: "She could have been there. I never saw her."

Teunis Van der Beek testified that he bid the 18 hogs in one bunch first; that he heard no one else there announce anything to the public about them; and that he bid the 9 in another bunch, and that the next day after he got the hogs home they were all droopy tailed, heads down, looked like they had a bad disease of "flu", and continued so to look Saturday, Sunday, and Monday thereafter, a dead one each day; that he told the plaintiffs the hogs were sick and wanted them to come out and see them. They came out in a car and wanted their money; they did not get out of the car, and would not look at the hogs, and said, "Get them vaccinated; they belong to Feeback and Chilton." Teunis stated that at that time he had paid them $50 and they said they would see Feeback and Chilton and have them do the right thing. He also testified that all the hogs, including the 9 Cameron hogs, died, and other hogs on the farm died, as well as the 27 bought. On cross-examination he testified he did not know how long he had been attending sales operated by Reed and Powell; that the hogs looked pretty decent; that he had until 3 or 4 o'clock to look them over before loading, but did not know that he did; that he had never before had a sick hog; that he had bought hundreds of hogs in 1932 and 1933. He also testified that Mr. Reed said at the sale that the 9 hogs were not vaccinated, and said he remembered what Reed said when the 18 hogs were offered for sale, but he did not believe he was there when the sale started.

Mr. Westercamp testified that when the 18 head of hogs were bid off they were offered for sale by the auctioneer and were said to be doubly vaccinated, that they had just come from across the river. Did not know whether he said he owned the hogs or not. Dr. Wymore testified that he saw the hogs and their condition after they were on the Van der Beek farm; that it takes from 5 to 9 days to develop

cholera after the hogs are exposed or inoculated; that when he was there the hogs were running a temperature of 106 degrees or better. Henry Jacobs testified that he was 21 years old; had farmed all his life; and worked for Teunis Van der Beek from February 8, 1933, to July 19th of that year; that there were no sick hogs on the place when he came there until these hogs were brought from Eddyville in 1933; that he saw sick hogs in a day or two after the hogs were brought from Eddyville. He had a talk with Chilton and Feeback, who asked him where the hogs were, and they went out and looked over them. They admitted they were the hogs they had. This was on Friday after Powell and Reed had been there. Chilton and Feeback gave him a message to give to Mr. Van der Beek. They told him they would make it right for the hogs that died; they said they had a certificate for vaccination of these hogs, but did not show it to him, and he said further, it was three days after the hogs first came from Eddyville that they died. This is the substance of all the testimony.

At the close of the case the plaintiffs moved the court to direct the jury to return a verdict for plaintiffs against the defendants on their counterclaim, and to strike counts 1 and 2 of the counterclaim, basing it upon the fact that plaintiffs had failed to prove the falsity of the alleged misrepresentation that the hogs bought by plaintiff were doubly vaccinated, or doubly treated, and were just from over the river; and had failed to prove that this was false; and that upon the entire record the evidence shows that the hogs were doubly vaccinated, and therefore there could be no breach of such alleged warranty. The court held that by the undisputed evidence the plaintiffs were entitled to a judgment against both defendants, whereupon the court directed a verdict for $179.83. The jury returned a verdict for that amount. A judgment was entered for this amount. The defendants moved for a new trial, jointly and severally. One ground of the motion was that the court erred in directing a verdict against Mrs. Teunis Van der Beek in favor of the plaintiffs, and further that there was no competent testimony that Mrs. Teunis Van der Beek bought the property; and there were a number of other grounds, the motion covering nine printed pages of the abstract. This motion was overruled.

At the outset of the consideration of this case we are confronted with the question,—Upon whom rests the burden of proof? Clearly the burden of proof rested upon plaintiff, not only to prove that Teunis Van der Beek bought the hogs, but that Mrs. Teunis Van der

Beek bought the hogs. The record does not support the allegation that Mrs. Teunis Van der Beek bought them. While it is true that Frank Reed says she did buy the hogs, he testified also that he did not see her about the sale at all; that Teunis bid them off. There was no showing that she ever asked Teunis to bid them off for her, or that he had any authority so to do, and that, as she was not at the sale, his statement in regard to that was a mere conclusion, and cannot form any basis for rendering a judgment against Mrs. Teunis Van der Beek.

As to Teunis Van der Beek, the only statement that he claimed was made there at the sale was that the hogs were "doubly vaccinated." And the evidence shows that Reed had been so informed by the parties from whom the hogs were received. We think that the burden of proof in this case lay first upon the plaintiffs to show that Mrs. Teunis Van der Beek had anything to do with buying the hogs, and that in this the plaintiff has utterly failed. We also think that the burden of proof was upon Teunis Van der Beek, or the defendants, as the case may be, to show that the statement made by the auctioneer was untrue, i. e., that the hogs had not been doubly vaccinated. The defendants in their argument cite section 2643 of the Code of 1931, par. 8; also sections 2664, 2661, and 2663. We see nothing in these sections cited that have anything to do with this case, and nothing laid down therein is controlling in this case.

In Greenleaf on Evidence, vol. 1, p. 93, section 74, of the 1876 edition, it is said:

"A third rule which governs the production of evidence is, that the obligation of proving any fact lies upon the party who substantially asserts the affirmative of the issue", and then quotes the Roman law upon this: *"Ei incumbit probatio qui dicit non qui negat."*

This is the elementary rule laid down as governing the matter, and we see no departure from it in the Iowa authorities.

Swafford v. Whipple, 3 G. Greene, 261 on page 264, 54 Am. Dec. 498, says:

"It is a well settled rule of evidence that the party who alleges, shall prove the affirmative of any proposition. Ordinarily the issue lies upon the plaintiff, and the *onus probandi* is on him to establish what he affirms. But it frequently happens in making up an issue,

the defendant assumes the affirmative proposition, or confesses and seeks to avoid the action, and would fail if no evidence in avoidance should be adduced by him. In such event the proof is incumbent on the defendant as the party who would fail, if no evidence should be given on either side, or as the party who has thrown a negative proposition on the plaintiff, which might be difficult, and perhaps impossible for him to prove, and in relation to which, the defendant has all the evidence in his possession."

Here the evidence as to whether or not the hogs were doubly vaccinated lies with the two parties from whom the 18 hogs were received, Chilton and Feeback. Harry Jacobs testifies that these two came to the Van der Beek farm and gave him a message to give to Mr. Van der Beek, that they would make it all right as to the hogs that had died, and said they had a certificate of vaccination of those hogs, but did not show it. This evidence was as much in the possession of Van der Beek, and perhaps more than in the possession of the plaintiffs.

In Barber v. Maden, 126 Iowa 402, 102 N. W. 120, which was a suit to recover services rendered to the defendant, the verdict was for the plaintiff, and both parties appealed. The defendant had pleaded a settlement, and this court said on page 403:

"The court properly instructed that the burden was on the defendant to prove the settlement pleaded. The existence of the presumption to which we have referred did not change the burden of proof from the defendant to the plaintiff. It remained where it was originally, and was only aided by the inconclusive presumption. The plaintiff did not admit a settlement of the claim sued on. Had she done so there would have been an end of the case at once, and all through the trial the burden of proving that such claim had been settled was on the defendant. Strictly speaking, the burden of proof never changes from one party to another during the trial. The amount of proof necessary to maintain an issue may be lessened by presumptions or by other matters, but the burden rests on the same party all of the time."

In Taylor v. Pac. Mut. Life Ins. Co., 110 Iowa 621, 82 N. W. 326, this action was brought on a policy of accident insurance issued to the plaintiff. The policy provided for liability for accidental injuries only, and contained an express provision that it does not cover and the company will not be liable for intentional injuries

inflicted upon the insured. This court, in passing upon it, said, on page 623:

"The trial court instructed the jury, in substance, that the law presumed the injury which the plaintiff received to have been accidental, and that the burden was upon the defendant to prove that it was not accidental, but willfully self-inflicted. The law will presume that the injury was not self-inflicted." Then says: "But the burden of proof did not rest upon the defendant to prove that the injury was not accidental. It is a fundamental principle of the law of evidence that he who affirms must prove. * * * To entitle the plaintiff to recover at all, he must prove by a preponderance of the evidence that his was an accidental injury, because the policy only insured him against such injuries. It is true that when an injury is shown the presumption arises that it was not self-inflicted, and to defeat a recovery the defendant must negative this presumption; but, in cases where the very foundation of the action is accidental injury, the presumption which the law raises is only an aid to the other evidence on the subject, and does not operate to shift the burden of proof on the entire issue to the defendant."

Veiths v. Hagge, 8 Iowa 163, is a case where an attachment had been issued and was levied on certain goods, wares, and merchandise in the store of the defendant who executed a bond for the delivery of the property, or the payment for same. The defendant had averred that the writ of attachment was wrongfully sued out because, among other reasons, he had no property except that which was free from execution, which he refused to give for the payment. The court says, on page 192 of the opinion in 8 Iowa:

"On issue joined by the plaintiff on this averment, the burden of proof is, without doubt, on the defendant, to show that the writ was so wrongfully sued out; and if he relies upon the fact, to sustain the issue on his part, that no demand was ever made upon him for such payment or security, and that there was, consequently, no refusal, he must prove it."

Chadima v. Kovar, 168 Iowa 385, 150 N. W. 691, was a suit where the plaintiff claimed that the defendant had tampered with the jury trying a case, in which the plaintiff was defendant, on account of which wrongful act the jury was discharged with consequent expense and damage to the plaintiff, and, to prove the wrongful act

of the defendant, plaintiff offered in evidence a certified copy of the district court record showing the filing of information against the defendant so attempting to interfere with the jury, and that upon the hearing of the contempt proceedings he had been found guilty and adjudged to pay a fine. The court instructed the jury that:

"The burden of proof is upon the plaintiff to establish, by the greater weight or value of the evidence, which does not necessarily mean the greater number of witnesses, the proposition set forth in instruction No. 1 herein. The burden of proof is upon the defendant to establish, in a like manner, that the continuance granted in the cause of Balcar v. Chadima was not due to the act of the defendant, but that the same was caused, in whole or in part, by the act of one Louis Wokoun, acting independently and not in concert with the defendant."

The defendant pleaded and sought to show that the continuance of the Balcar case was ordered wholly or in part because of a wrongful interference with the jury by one Wokoun. This court says, on page 391 of the opinion:

"The objection to this paragraph that it erroneously casts upon the defendant the burden of proof must be sustained. The affirmative of the charge against the defendant was at all times upon the plaintiff, and the fact that defendant sought to show that the fault with respect to the continuance was [due to] the conduct of another and different person did not lessen the plaintiff's burden of proof or impose upon defendant the burden of showing that it was not due to his act. This is an elementary proposition and requires no citation of authorities."

So we conclude that the lower court here erred in directing a verdict against Mrs. Van der Beek, as there was no evidence to sustain such a verdict, and the burden of proof was upon the plaintiff to show that fact, and that they failed utterly in so doing. Even if he did not wholly fail, the evidence was not conclusive that Mrs. Van der Beek had anything to do with the purchase of the hogs in question. In that case the court would have no right to direct a verdict.

As to the verdict directed against the defendant Teunis Van der Beek, he admits the purchase of the stock and the price paid. He has failed utterly to prove, and there was no evidence to go to the

jury on, that tended to establish, any of the defenses he set up. So for these reasons this cause is reversed as to Mrs. Teunis Van der Beek, and is affirmed as to Teunis Van der Beek.—Reversed in part; affirmed in part.

ANDERSON, C. J., and ALBERT, DONEGAN, RICHARDS, and POWERS, JJ., concur.