REGINA GRIFFIN, Appellant, v. JAMES G. STUART, Appellee.

No. 43526.

DECEMBER 15, 1936.

Maher & Mullen, Burnstedt & Hemingway, and Thomas & Loth, for appellant.

Helsell, Burnquist, Bradshaw & Dolliver and George B. Aden, for appellee.

PARSONS, C. J.—The plaintiff, appellant herein, brought suit in the district court of Hamilton County, Iowa, alleging that she was struck by an automobile driven by the defendant, in Fort Dodge, Webster county, Iowa, on Twelfth street, while she was crossing the street. The case was tried to a jury and resulted in a verdict for the defendant, and plaintiff appealed.

To the abstract is attached a plat showing the surroundings of the accident, and also attached to the abstract and to the amendment to abstract, there are a number of photographs of surroundings near the place of the accident. Twelfth street in Fort Dodge is a north and south street. First Avenue South runs into Twelfth street from the east, then drops south about a hundred feet before continuing on west from Twelfth street. Second Avenue South also runs into Twelfth street from the east and drops down a hundred feet before continuing west from Twelfth street. Each of these streets is shown on the plat to be seventy feet in width, and the paving on Twelfth street is forty feet from curb to curb. The accident in question took place between what would be the north line of Second Avenue South to the east, and some short distance north of the north line of Second Avenue South, on the east of Twelfth street, so it will be seen that one traveling on either of these avenues from east of Twelfth street, desiring to continue on the same numbered avenue, to the west, would have to go into Twelfth street and south for a short distance and then turn to the west to continue his travel on said avenue. In other words, there are no intersections of the two avenues with Twelfth street, but each of these avenues, both from the east and the west, run into Twelfth street.

The petition alleges that about 7:15 p. m. on or about the 23rd day of December, 1934, the plaintiff started to walk across Twelfth street in the city of Fort Dodge, just north of the point where Twelfth street is joined on the east by Second Avenue South; that the plaintiff left the west curb on Twelfth street and started to walk across the traveled portion thereof, walking in an easterly direction, and when she reached the center of the paved portion of the traveled part of Twelfth street plaintiff stopped and waited until it was safe for her to proceed across the east half of the paved portion of Twelfth street, after the

passage of some motor vehicles from the south; that while plaintiff was standing in said position in the center of the street, the defendant Stuart approached the point where plaintiff was standing, driving a Ford V-8 automobile, which is owned by defendant, or was being driven by him with the consent of the owner thereof; that Stuart was driving said motor vehicle in a southerly direction on Twelfth street at a highly dangerous and reckless and unlawful rate of speed, and that the motor vehicle collided with the plaintiff in such manner and with such force as to inflict severe and permanent bodily injuries to her.

There were eleven specifications of negligence attributed to defendant by the plaintiff, which properly raised the question as to whether or not he was operating the automobile in a careful and prudent manner, and at a careful rate of speed; that he was imprudent and negligent, without regard for the safety of other persons using said highway, and without regard for the safety of plaintiff; that he did not have the car under control as required by law; that he failed to turn to the right and yield or give half of said traveled portion of the highway; that he was operating and driving his car at an improper and reckless rate of speed in violation of the laws of the state of Iowa; that he was operating the motor vehicle at an unlawful rate of speed in the business district, in excess of fifteen miles per hour; that he failed to maintain a proper lookout for others while driving and traveling upon a public highway as required by law; that he failed to stop the motor vehicle when he discovered, or in the exercise of reasonable care should have discovered, the plaintiff in a place of peril and danger; that he failed to have the car under control, and failed to reduce the speed at which he was traveling, to a reasonable and proper rate of speed, when approaching the plaintiff standing in the traveled portion of a public highway; that Stuart failed to keep the motor vehicle he was driving under control, and failed to reduce the speed thereof to a reasonable and proper rate when approaching an intersection of a public highway as required by law; and that the defendant failed to operate the motor vehicle in such a manner as to travel on the right-hand side of the center of Twelfth street in the City of Fort Dodge, Iowa.

The evidence of the plaintiff and her witnesses shows that the accident happened shortly after seven o'clock p. m.; that plaintiff lived on the north side of Second Avenue South, a block

and a half east of the Deep Rock Station on Twelfth street, and on the same side of the street, that she had been at her cousin's home and left there about seven o'clock in the evening, starting home on foot; that she came to Twelfth street from the west on First Avenue South; that when she reached Twelfth street she turned south at the Skelly Oil Station and walked south a short ways and then turned to go east; that she went to the curb and looked north to see if there were any cars, and there were none; that she walked to the center of the street and saw a car approaching from the south; that she kept walking until she got to the center of the street to wait; that she had looked north between the time she left the curb and when she stopped in the center of the street, and had not seen anything coming from the north. That Twelfth street is about forty feet wide from curb to curb; that when she first saw the car coming from the south it was near the Deep Rock Oil station on the east side of Twelfth street. The plat shows this station to be on the east side of Twelfth and on the south side of Second Avenue South, the lines of these two streets forming the north and west lines of the oil station. That there was another car coming from the south about a block or so farther south; that she didn't see any car coming from the north at any time, and she was standing in the center of the street facing east, with her head turned toward the south; that while she was standing there and had made no move in any direction, she heard no horn sounded as she walked diagonally across the street, which is just across the street from the Deep Rock oil station on the east; that she walked diagonally toward the sidewalk to the center of the street, and does not remember being struck; the last thing she remembers was seeing the car coming from the south, and she doesn't remember anything else until she woke up in the hospital. Plaintiff alleged she was injured in her left leg, from the foot to the hip; that the left shoe was completely torn off and beyond repair.

On cross examination plaintiff stated she stepped off the curb and knew she could make it to the center of the street, and that when the car from the south had passed she would have plenty of time to go the rest of the way to the sidewalk; that when she reached the center of the street she looked to the north again and saw nothing approaching, and she was only a few feet from the curb. That when she reached within a few feet of the middle of the street she looked again and saw nothing ap-

proaching from the north, and that after she stopped in the center of the street she did not hear the signal of any horn, and didn't see any lights coming from the north, but she did see and was watching the car coming from the south; that she stopped to make sure of avoiding it. Her testimony shows she was familiar with the surroundings. The car from the south was moving at more than fifteen miles an hour, probably twenty or thirty miles an hour; that she didn't know what hit her; she also testified that the various structures on Twelfth street were all business buildings, and that the house south of the Skelly Oil station was a physician's office.

Merle Johnson testified for the plaintiff. She said she was eighteen years of age; that she walked west on Second Avenue South on the west side of the street and reached the Deep Rock filling station on the corner of Second Avenue South and Twelfth street, (shown on plat); that all of the avenues south of Central Avenue jog at Twelfth street about half a block, and do not cross Twelfth street in a direct course. She testified that she saw Miss Griffin just as she crossed the driveway of the Deep Rock station; that Miss Griffin stepped off the curb on the west side of Twelfth street, and witness didn't notice any traffic on Twelfth street when Miss Griffin started across; then she noticed Miss Griffin's body thrown into the air, and when she came down she lay there in the middle of the street. The witness testified she watched the car which struck Miss Griffin; that it pulled up to the curb by a stop sign, and that she and her companion called to the man who was in this car, and he came back, and went into the station; that there was no other car behind Stuart that she noticed, after Miss Griffin was struck by this Ford; that there was a Chevrolet car coming from the south; that when she was struck Miss Griffin stood about the center of Twelfth street. The witness testified she noticed the Ford V-8 the first time when it was even with First Avenue South; that Miss Griffin had just stepped off the curb and walked toward the middle of the street; that the witness heard the Ford sound its horn when about forty or fifty feet north of Miss Griffin, and after it hit Miss Griffin it went on about the same speed until it got to the stop sign; that when Miss Griffin was hit her body was thrown around and she fell with her head pointing east and her feet west; that when struck the car lifted her from the ground. The witness further testified that the ice in the street where the

cars traveled had been worn off by the traffic, but there was a ridge of ice in the center of the street; that Miss Griffin had reached the middle of the street and was waiting for the car from the south to pass; she believed Miss Griffin was watching the car coming from the south. The witness said the car from the south had not reached the point of the accident at the time the Ford hit Miss Griffin; that there was some little distance yet for it to go before it reached her; that Miss Griffin was hit by the Ford V-8 coming from the north, and the impact was loud enough for Miss Johnson to hear it; that she and her companion had stopped to see if anything was going to happen, when they saw Miss Griffin crossing the street.

On cross examination she said the lights were on the filling station and the automobiles; that when she saw the Ford coming there were no other cars going south at all; she said she didn't notice who was in the Ford until he came back from the corner; that Miss Griffin's body was thrown a couple of feet from the ground by the impact of the left front fender of the car, and she sort of twisted in the air. Witness testified that when the plaintiff was hit she was standing on the ridge of ice in the middle of the street, or just on the west edge of it, directly in the center of the street; that there was plenty of room for the car to pass and completely miss her; the impact made a dull thud. The witness further testified that a car was coming from the south, and when the impact took place this car was seven or eight feet south of where Miss Griffin was hit; that that car had nothing to do with the accident; that Miss Griffin was hit before the Chevrolet went by, and that the Ford and Chevrolet were the only cars in the street at the time.

The testimony of the companion of Miss Johnson, Paul Jordan, was practically the same. He says the Ford car coming from the north struck the plaintiff; that it then started to speed up; that he thought the Ford was trying to steal away; that a man on the sidewalk told him to get the license number, and the man hallooed to the man in the Ford. Mr. Stuart got out of his car and looked at his front fender; that he then came back to the oil station, and while there he said to plaintiff that he thought he had struck the fender on the other car, and witness told him he better report to the police. Jordan testified that he knew perfectly well it was the Ford that struck Miss Griffin; that he noticed the speed the Ford was traveling immediately before Miss

Griffin was struck, and it was at least twenty-five miles an hour; that he saw Miss Griffin go into the street and heard the Ford honk, but she was so close to the ice in the middle of the street that he thought something was going to happen if the car did not turn out; that there were no cars parked on the west side of Twelfth street; that when he picked the plaintiff up her body was lying five or six feet south of the lamp post; that the Chevrolet was coming from the south, and he saw it after he saw the Ford, and that he saw Miss Griffin before he saw either of the cars; that the Chevrolet was going about twenty miles an hour; the car from the north was closer to Miss Griffin than the one from the south; that he saw the impact was from the Ford car, the left fender came up against her, but he didn't think the bumper hit her.

The defendant in his answer to plaintiff's petition, had pleaded in three divisions: first division being a general denial; second, that the plaintiff was guilty of negligence contributing to her injury, and that her own carelessness contributed to and caused the injuries she complained of. The third division was that defendant specifically denied his car struck the plaintiff, and alleges the injury was caused by some other and different vehicle than the one in which he was riding; that he does not know the name or description of the operator of said motor vehicle, but alleges the same was coming from the opposite direction, and that it struck plaintiff and caused her injuries complained of.

The case was submitted to the jury, the record being short, and after instructions by the court, the jury found a verdict for the defendant. Instruction 18, given by the court, recites as follows:

"One of the defenses interposed by the defendant to plaintiff's claim is that he denies that his car struck the plaintiff, and alleges that her injuries were caused by some other and different vehicle. Now, you are instructed that if the plaintiff has failed to prove by a preponderance of the evidence that the defendant's car was the one that struck her, then the plaintiff would not be entitled to recover, and your verdict should be for the defendant."

To this instruction the plaintiff excepted in a motion for new trial and objections and exceptions to instructions. The reasons set forth in the motion and exceptions were that this

was an improper issue and placed the burden upon plaintiff to prove that her injuries were not caused by some other and different vehicle and allowed the jury to speculate, in the absence of any evidence. Not only was it an improper issue, but it imposed an unwarranted burden upon the plaintiff to show that it was not some other and different vehicle that struck the plaintiff, but was the defendant's car only.

We can see no justification for the giving of this instruction. The defendant in the third paragraph of his answer set up the defense as an affirmative defense, i. e., some other car struck the plaintiff than his. Not a word of evidence was introduced to show it; two witnesses had testified that they saw the plaintiff struck by the defendant's automobile. The defendant himself had with him his son and wife. He testified, and his wife testified for him. Neither of them testified, nor did any other person, to seeing any other car strike the plaintiff. The defendant was driving his car, hence he was sitting on the left side of the car as he went south, and the center of the street would be to the east. The pavement was forty feet wide. The undisputed testimony shows that the plaintiff had reached the center of the street and was standing there, she says, to await the car coming from the south to pass.

The defendant's wife said that their car did not strike Miss Griffin, and she didn't hear any dull thud against the car. She said she saw that the left fender had been wiped gently as with a brush or cloth; that was on the edge of the fender; that the fender was not damaged, and the bumper was not bent or broken. That as they drove south on Twelfth street cars were coming from the south. On cross examination she said she first saw Miss Griffin in the filling station, and she didn't see any human being standing in the center of Twelfth street as they drove past. As to the mark on the front fender, she said their car was dirty and dusty, and a part of the dirt had been brushed off by something, it looked like it had come in contact with some kind of cloth that had brushed it off; that as they were driving down, there was a car coming from the south, and she said she said to her husband, ''Pull over'', and he replied, ''I can't'', and she looked at the parked car well over toward the curb. That her husband was driving close to the parked car; that she didn't see any woman standing in the street, or lying in the street, and didn't see any one at any time, and she didn't hear

any click or feel anything strike the car, but her husband said, "I will look at my fender."

The defendant himself testified in response to the question, "I will ask you to tell this jury, as you came from the intersection to the place where Dr. Thom lived, did you hit Regina Griffin anywhere along that street?" and he said, "No sir." Asked "How do you know you didn't?" he answered, "I could not have hit her." He said he heard something click as he passed the car coming from the south, like something thrown up and hit the underside of the car. That the fender was not dented or bent, and there were no marks on the hood. That he went back to the station and someone said a woman had been hurt. He said the man ran ahead, but said to him, "You were in the clear in that; she walked in the middle of the street."

True, the defendant again said in reply to the question, "What is the fact as to whether you did strike Miss Griffin?" he replied, "Well, I did not strike her." Defendant said he stopped by the Stop sign and looked at his car; that his son was sitting with him, and his wife in the rear of the car. He said he never saw Miss Griffin until he saw her in the oil station; that the street lights were on, and he was watching the traffic; he claimed there were some cars parked on the west side of Twelfth street, but he didn't know whether they were parked there after or before the accident; that he didn't examine the left fender particularly; he walked around his car, and his attention was attracted to the crowd, and he went up there. He said he went to the police station and filed a report, and that Exhibit 12 was the written report signed by him, which reads as follows:

"MOTOR VEHICLE ACCIDENT REPORT

"Date of Accident: Dec. 23, 1934, at 7:15 P. M.

"Weather: Dark

"Vehicle 1. Owner, James G. Stuart. Driver, same; operator's license No. 40-887. Age 48, Sex, Male. Collided with pedestrian. Address, 315 3d St., Webster City. Vehicle: Ford V-8, license No. 40-4456, year 1934.

"Persons injured: Regina Griffin, 1330 2d Ave. So. Age 40, Sex female.

"Direction of travel; going straight. Road condition dry. Kind of road: pavement. Pedestrian crossing between intersections. Road: straight; city...

"Remarks: No. 1 driving south on 12th St. when near Deep Rock oil station. Other car cut through oil station. It was then Stuart felt something hit his car. He stopped and went back and saw a woman had been hurt. He didn't know whether he hit her or not.

"Date of report: 12-33-34.

(Signature) Jas. G. Stuart."

Defendant said he never saw any object standing on the pavement or lying on the pavement opposite the Deep Rock filling station when he drove up; that he couldn't see it, and didn't see it. He claims he did not go out in the center of the street. He was asked the question: "Now, you never did see Miss Griffin until you saw her in the Deep Rock Oil station?" and he replied, "No sir. I never saw her. She was no place in my line of vision, I was watching the street traffic; the lights were on the filling station and the street lights were on. I was watching traffic."

We are of the opinion that under the record instruction 18 cannot be justified. Two witnesses testified that they had seen defendant's car strike the plaintiff. There wasn't a word of evidence in the record to show that any other car struck her. Yet, by this instruction, plaintiff was called upon to show to the jury that no other car had struck her. The undisputed evidence in the case shows that at the time of the accident there were only two cars traveling the street, the defendant's car coming from the north, and the Chevrolet coming from the south, and that the Chevrolet had not reached north as far as the plaintiff was at the time she was struck. The statements of the defendant and his wife, as to not striking plaintiff, were mere conclusions. Neither had seen her; she was on the street, in the center there, on the ice left in the center of a street forty feet wide; a slight touch might unbalance plaintiff, such a touch not noticeable to the parties in the car, not knowing of her presence, enough to wipe off the left fender as if with a piece of cloth, as testified to by defendant and his wife.

So the instruction, putting upon the plaintiff the burden of proof, which was assumed by the defendant when he filed the third division of his answer, i. e., that some other car struck her, was cast upon plaintiff to prove it did not. It is an elemental principle of law, laid down in Greenleaf, and discussed in Co-

operative Sales Co. v. Van der Beek, 219 Iowa 974, beginning on page 978, 259 N. W. 586, 588, that the obligation of proving any fact lies upon the party who substantially asserts the affirmative of the issue, quoting from the Roman law, *"Ei incumbit probatio qui dicit non qui negat."* This affirmative defense of the answer injected in this case by the defendant called upon him to give some proof of the assertion there made, and did not call on the plaintiff to negative the same until evidence had been introduced to support that assertion that some other car struck her. There was no evidence to support the defendant in his proposition made in regard to some other car striking her.

In City Nat. Bank v. Mason, 181 Iowa 824, 826, 165 N. W. 103, 104, this court said:

"The court instructed the jury that the burden of proof was upon the defendants to show that plaintiff took the note with notice of the want of consideration, and it is insisted that the record was without evidence bearing thereon. We have been unable to discover any such evidence in the record, and because of its absence are of the opinion that this issue ought not to have been submitted to the jury."

Veith v. Cassidy, 201 Iowa 376, 207 N. W. 328, is authority for the proposition that nonsupported issues must not be submitted to the jury, and when so done call for a reversal.

In Borough v. Minn. & St. L. Ry. Co., 191 Iowa 1216, 184 N. W. 320, this court held error results from copying into the instructions all the grounds of negligence enumerated in the petition, and directing the jury that one or more of the grounds "alleged by the petition" must be established, when *some* of the grounds are without support in the evidence.

In Northwest Sec. Co. v. Schneckloth, 199 Iowa 545, 547, 202 N. W. 97, 98, the court says:

"Another rule of this court which the district court failed to observe is that nondisputed questions should not be submitted to the jury, and that by doing so the court commits error."

The plaintiff is appellant herein. She urges this for a ground for reversal of the case. There can be no question in the authorities but that it is good, therefore a reversal must follow. There are other matters argued upon which we do not pass. They will probably disappear upon a retrial of the case, but for

the error pointed out, the case is reversed and remanded to the district court for trial.—Reversed and remanded.

ANDERSON, ALBERT, HAMILTON, and DONEGAN, JJ., concur.

STIGER and KINTZINGER, JJ., dissent.