JOHN F. HART, Administrator, Appellee, v. DAVID HINKLEY et al., Appellants.

No. 41806.

MARCH 7, 1933.

Comfort & Comfort, and McGrath, Arched & McGrath, for appellants.

Sylvester Flynn, and Lee, Steinberg & Walsh, for appellee.

 Stevens, J.—It appears without conflict in the evidence that on the evening of September 16, 1931, the appellant David Hinkley invited Joseph Hall and Eugene Hart to accompany him in his father's automobile, an eight-cylinder Dodge sedan, from Eagle Grove to Fort Dodge. The course pursued was due west four miles and then south over a graveled highway. When the automobile reached a point in the highway about three and one-half miles from where they turned south, it ran off the road into a ditch, killing Eugene Hart. The automobile was thrown against the fence, top downward facing north and demolished. It was found about 300 feet south of a small bridge in the highway over a drainage ditch.

This action is based upon section 5026-b1 of the Code of 1931. Three charges of recklessness on the part of the operator of the automobile were submitted to the jury, in substance as follows: (a) That he was reckless in the operation of the automobile, in that he drove it at an excessive and dangerous rate of speed, considering the character of the highway and the surroundings; (b) that the said driver was reckless in that he was heedless to the obvious danger involved and was recklessly inattentive in the operation of the car; (c) that the said driver recklessly operated the same over the road, around the curve, and over the bridge near the scene of the accident without having the same under control.

At the conclusion of the evidence and after both parties had rested, appellant moved the court for a directed verdict in behalf of both appellants, jointly and severally, upon the ground that the evidence was insufficient to sustain a verdict against either of them.

Immediately before going into the ditch, the automobile crossed a small bridge in the highway over a drainage ditch. It was a wooden bridge about fifteen feet long with railings on either side. So far as the evidence shows, the bridge, which was located several feet west of the center of the highway, was in good condition for travel. The course of traffic as it approached the bridge was, by reason of the location thereof, to the west and, after crossing it, quite sharply to the east. The condition of the highway was apparently substantially that of graveled highways generally. Whether the presence of the bridge was clearly disclosed by the lights on the car is somewhat doubtful. The testimony tended to show that the speed of the car at the time of the accident was from forty-five to seventy miles per hour. Called as a witness before the coroner's jury, the driver of the automobile testified that the speed of the car was from fifty to

fifty-five miles per hour. According to alleged admissions made by him it was seventy miles per hour. To one other witness, the driver stated that the speed was too fast. According to the testimony of one of the occupants of the automobile, it began swerving in the highway after crossing the bridge, causing the driver to lose control thereof. The driver was familiar with the highway generally but had not perhaps recently driven over it. The admissions alleged to have been made by him were not denied. A detailed statement of the evidence is unnecessary.

The driver of the car stated on the day of the funeral that deceased requested him to reduce the speed of the automobile. There was ample testimony from which the jury could find that the car was being driven some distance north of the bridge at a rate of speed so great as to attract the attention of several persons residing in the vicinity. It is conceded that the automobile was in the possession of and being driven by David Hinkley with the knowledge and consent of his father, the owner thereof. The motion for a directed verdict specifically challenged the sufficiency of the evidence to sustain a verdict against the owner of the automobile. It is urged at this point that admissions of the driver as to the speed of the car and the request of the deceased that same be reduced were in no sense binding upon the owner and that, with this testimony eliminated, there is nothing in the record to sustain the charge of reckless operation as against him. The court instructed the jury that the admissions of the driver could not be considered or given weight as against the owner of the automobile. The writer at this point has difficulty in giving practical application of the foregoing rule of evidence to the present action. The right of a guest of the operator to recover damages of the owner for injuries resulting from the reckless operation of an automobile by one operating the same with the consent of said owner is in no way challenged in this case. The case was tried on the theory that such liability exists.

Section 5026 of the Code of 1931 makes the owner liable in all cases where damages are done by any car driven by any person with his consent by reason of the negligence of the driver. It is manifest that the owner of the automobile in this case was not personally guilty of reckless operation thereof. He was not present, the deceased was not his guest, and he had nothing to do therewith. His liability, if any, is purely statutory. We held in Wilkinson v. Queal Lbr. Co., 208 Iowa 933, 226 N. W. 43, that negligence

on the part of the driver must be established against the owner by the usual and ordinary rules which prevail in establishing the liability of a master for the negligence of his servant. This rule has been followed in other cases. Cooley v. Killingsworth, 209 Iowa 646, 228 N. W. 880; Broderick v. Barry, 212 Iowa 672, 237 N. W. 481, 75 A. L. R. 1530; Ege v. Born, 212 Iowa 1138, 236 N. W. 75, and other cases.

Whether a particular speed of an automobile is dangerous depends upon the surroundings. Cerny v. Secor, 211 Iowa 1232, 234 N. W. 193. In McQuillen v. Meyers, 213 Iowa 1366, 241 N. W. 442, 445, we said:

"The jury were told that the rate of speed was not alone determinative of recklessness; that it was not sufficient for her to show that the driver was guilty of negligence, but that she must go further and show that the driver operated the automobile in a reckless manner. Mere violation of speed standard, or mere failure to have the car under control, while it might be prima facie evidence of negligence, would not of itself be recklessness."

Something more is shown in this case than mere speed. Seventy miles per hour in the nighttime upon a graveled highway would be more or less hazardous at the best. When considered in the light of the surroundings and circumstances shown in this case, we think the evidence quite sufficient to sustain the verdict against the driver of the automobile. The course of the highway, as it approached the bridge, necessitated an abrupt turn to the right and a more or less abrupt turn to the left after making the crossing, which is a circumstance to be considered. It is obvious from the testimony that the driver of the automobile lost control thereof because the speed at which he was driving was so great that he was unable to maintain control of the car and guide it across the bridge and make the necessary turn to the left. It may be that the speed of the car was less than seventy miles per hour, but when considered in the light of the facts and circumstances, was so great as to constitute reckless operation within the meaning of the statute. Proof of reckless operation in this case does not, therefore, rest alone upon the undenied admissions of the driver of the automobile. Other testimony, coupled with the surroundings and circumstances of the unfortunate accident, are quite sufficient at this point.

II. The jury returned a verdict of $15,000. This verdict

was reduced by the court, with the acquiescence of appellee, to $10,-000. The deceased was seventeen years of age. He was a student in the Eagle Grove high school. A verdict of $15,000 was, we think, clearly excessive. There is nothing, however, in the record, except the amount, to indicate that it was the result of passion and prejudice on the part of the jury. The court is of the opinion that the verdict should be further reduced to $7,500.

III. Complaint is also made of the failure of the court to submit an issue to the jury alleged to have been raised in the evidence. The court submitted all issues tendered by the pleading. The thought of counsel appears to be that the court should have submitted a mere issue of fact arising upon the trial of the case to the jury by some sort of instruction. The cases cited at this point do not sustain the proposition urged. In each of the cases cited, the issue was raised in some form by the pleading. Kaufman v. Borg 214 Iowa 293, 242 N. W. 104; Overhouser v. American Cereal Co., 128 Iowa 583, 105 N. W. 113; Babbage v. Second Baptist Church, 54 Iowa 172, 6 N. W. 253; Fernbach v. City of Waterloo, 76 Iowa 598, 41 N. W. 370; First Nat. Bank v. Cook, 171 Iowa 41, 153 N. W. 169, 172; Faust v. Hosford, 119 Iowa 97, 93 N. W. 58; Clark v. Monroe County Fair Ass'n., 203 Iowa 1107, 212 N. W. 163; Wise v. Outtrim, 139 Iowa 194, 117 N. W. 264, 130 Am. St. Rep. 301. In any event, the assignment of this proposition is wholly inadequate under the rules of this court to invite review.

IV. Complaint is made of paragraphs 9 and 10 of the court's charge to the jury. Instruction 9 related to the measure of recovery. The court in this instruction told the jury that the amount for which recovery could be had was the present worth of the deceased's estate. Instruction 10 related to and advised the jury what consideration and effect should be given to mortality tables offered in evidence. The court did not in either of the instructions tell the jury that the present worth of his estate should be estimated upon the basis of his expectancy at majority. The court should, no doubt, have so instructed, but this went only to the measure of recovery. Owing to the fact that deceased was a student in the high school, a difference between the present worth of his estate based upon his present age and his age at twenty-one would not be very great. As stated, the verdict was reduced $5,000, and we think, with the reduction now made, sufficiently met the requirements at this point.

If, therefore, appellee shall within thirty days from the date

of the filing of this opinion remit all in excess of $7,500 and costs, the judgment will be affirmed; otherwise reversed.—Affirmed on condition.

KINDIG, C. J., and UTTERBACK, DONEGAN, ALBERT, and EVANS, JJ., concur.