EDWARD A. WHITE, Appellant, v. HOMER O. CENTER et al., Appellees.

No. 41887.

APRIL 3, 1934.

REHEARING DENIED NOVEMBER 22, 1934.

E. N. Farber, and L. D. Dennis, for appellant.

Grimm, Elliott, Shuttleworth & Ingersoll, and Putnam, Putnam, Langdon & Fillmore, for appellees.

DONEGAN, J.—█ On the afternoon of Friday, October 10, 1930, the plaintiff and a companion named Orlo Bush, who were both students at the State University of Iowa, left Iowa City to spend the week-end at their homes in Marshalltown. From Iowa City to Cedar Rapids they drove a car belonging to a friend, which by arrangement was left in Cedar Rapids. From this point they planned to hitch hike the balance of their journey. They obtained a ride with a traveling salesman from Cedar Rapids to what is known as Vinton corner, where the road to Vinton branches off to the north of the Lincoln Highway. They then waited at this intersection until they were picked up by the defendant H. C. Center, who was also going to Marshalltown. When they reached a point about 10 miles southeast of Marshalltown, where the Lincoln Highway ran in a northerly and southerly direction, the car in which they were riding ran into a load of corn which was traveling northward near the east edge of the paved highway, and the plaintiff received injuries for which he sued H. C. Center, the driver of the car, and Homer O. Center, the owner of the car, claiming that the accident and his injuries were caused by the recklessness of H. C. Center, the driver. The defendants filed a general denial and the case went to trial. At the close of the plaintiff's evidence, the defendants filed separate motions for a directed verdict in favor of the defendants. These motions were sustained by the court, and from the ruling of the court sustaining such motions the plaintiff appeals.

Various grounds were set out by the defendants in their motions for directed verdict. The motions were sustained *in toto* by the trial court, and the appellant in his assignment of error has alleged error on the part of the trial court as to its ruling on each ground of said motions. Although variously alleged, the grounds of such motions may be reduced to the three following propositions: First, that the evidence was insufficient to show that any reckless operation of the automobile by the defendant H. C. Center was the proximate cause of the accident and of plaintiff's injuries; second, that the evidence shows that the plaintiff voluntarily became a guest of the defendant H. C. Center, and rode with him for forty-five miles before the accident occurred, and that he thus acquiesced in the acts and conduct of the defendant and assumed the risk, if any, connected with defendant's operation of the automobile; third, that the liability of an owner for the acts of one driving his car with his consent, is purely statutory, and there is no statute which

imposes upon the owner liability for damages resulting from the reckless acts of one driving the car with the owner's consent.

I.   The evidence shows that after having been picked up by the defendant H. C. Center, the plaintiff and his companion rode from the Vinton corner to the place of the accident, a distance of approximately forty-five miles. The automobile was a Model A Ford Cabriolet and the top was down. Both the plaintiff and his companion testified that the wind was coming in over the top of the windshield and from the sides, and that they crouched down in the seat to avoid the force of the wind as much as possible. Bush testified that they left the Vinton corner shortly after 5 o'clock and, according to the testimony of other witnesses, the accident occurred somewhere between 6 and 6:10 o'clock. Bush further testified that some time after they left the Vinton corner, he noticed that the speedometer was registering from 55 to 65 miles an hour. He further testified that he did not know how fast the car was moving when the collision occurred, but that the driver never slowed down his car at any time. The place where the accident occurred was upon a straight level stretch of paved road, the Lincoln Highway, and was visible a distance of at least a quarter of a mile to the south thereof. At the point where the collision occurred, the car in which the plaintiff was riding was proceeding northward on the right side of the road.

Mr. Keen, one of plaintiff's witnesses, resided on the west side of the road and had in his employ a young man who was husking corn in a field south of his house. This witness testified that shortly before the accident he was at his house waiting for this young man to come in with his load of corn; that he saw him drive out of the field onto the Lincoln Highway, and that he was then between 80 and 90 rods from the house; that when he saw this young man approaching with his load of corn he went to the barn to get a team to put the power on the elevator, and just as he went into the barn he heard the crash; that he then ran out and looked down to where he saw the team coming and that he could see that the wagon was pretty badly wrecked; that he immediately ran to the place of the accident and that when he got there the wagon was piled up on the shoulder on the east side of the pavement, the corn was in a heap, the automobile was on fire and was turned crosswise on the pavement with the front end rammed into the southwest corner of the load of corn, the rear wheels of the wagon were broken all to pieces, the spokes were all broken out of one front wheel and both rear

wheels, the tire on one of the rear wheels was bowed where the automobile had hit it between two spokes, the wagon reaches were broken in three pieces, the side boards were broken, the front and back end gates were all smashed, the throw-boards were broken and lying in the ditch on the east side of the road, the harness and especially the hold-back straps were badly broken, the wreckage was piled up on the top of the team, and that after they succeeded in getting the team out of the wreckage one of the horses died within a few minutes. This witness further testified that after the wreckage was pretty well cleaned up he asked H. C. Center, the driver of the car, what was the matter with him, and in response to his question H. C. Center said, "Just a little recklessness."

A Mr. Haire and his wife were also witnesses for plaintiff and testified that on the evening in question they were riding southward on the Lincoln Highway in the front seat of an automobile; that when they were from a half to a quarter of a mile away they saw the boy on the load of corn driving northward on the east side of the road; that the wagon appeared to be close to the edge of the shoulder of the road; that when they met the boy with his load of corn he was on the right side of the road and there was plenty of room to pass; that about the time they passed the load of corn they observed a car coming from the south going northward and that it was then one-half to a quarter of a mile away and coming towards them; that there was no other car or anything to obstruct their view and they saw this car plainly; Mr. Haire estimated the speed of the car in which he was riding at between 20 and 30 miles, and Mrs. Haire estimated its speed at 30 to 32 miles per hour; that as this car approached them from the south they noticed it was being driven awfully fast; that they noticed the vibration and swerving of the car such as takes place where a light car is driven at a high rate of speed; that when they met the car that was coming from the south they were probably two or three hundred feet south of the load of corn; that as soon as this car passed them the driver of the car in which they were riding brought his automobile to a stop, and that very shortly after this car passed them they heard the crash; Mr. Haire estimated the speed of the Center car when it passed them at from 60 to 70 miles per hour, and Mrs. Haire estimated its speed at from 60 to 65 miles per hour.

■ The rule is so well recognized as to require no citation of authority that, in passing upon a defendant's motion for a directed verdict, all of plaintiff's evidence must be accepted as true in the light most favorable to the plaintiff and must be given the strongest inferences reasonably deductible therefrom. Applying this rule to the evidence in this case, we think the evidence tends to establish and that a jury might find therefrom, that at the time of the collision appellees' automobile was traveling at the rate of 70 miles per hour; that while traveling at this rate it struck the rear end of the wagon a sufficiently direct and violent blow to drive the wagon forward, break the hold-back straps on the harness and pile the wreckage of the wagon up on the team; that it was sufficiently light at the time that other witnesses saw this wagon from a distance of one-half to one-quarter of a mile and that the driver of appellees' car also could and would have seen this wagon for at least a quarter of a mile if he had been looking; that the evidence of the witnesses is sufficient to indicate that there was no other automobile, except that in which the witnesses, Haire and his wife, were riding, at or near the scene of the accident at the time it occurred; and that the testimony of Haire and his wife, together with the location of the wreckage after the accident, is sufficient to show that the wagon was well to the east edge of the paving or even partly off the paving and on the east shoulder of the road when it was hit.

■ Appellees contend, however, that, admitting all these facts and allowing all the reasonable inferences to be drawn therefrom, there is still not enough to show that the accident was caused by recklessness on the part of the driver of the automobile. Appellees argue that there is no evidence as to what the driver of the automobile was doing at and just before the moment of the accident; that there is nothing to show whether the driver was or was not keeping a proper lookout, or whether he did or did not try to turn to the left and avoid hitting the wagon, and proceed to enumerate several possibilities which might have happened and which, if they did happen, would negative recklessness on the part of the driver. Appellees argue that so far as the record shows the lights may have failed before the driver reached a point where he could have seen the wagon load of corn, or just as he reached it; that the driver may have watched the wagon load of corn constantly and have attempted to slow down before reaching it and through no fault of his the brakes may have failed at that moment; or that another

car may have crowded the defendant into the wagon load of corn. The evidence, however, is that there was sufficient daylight so that the wagon load of corn could have been seen for at least a quarter of a mile, and that the bright lights on the automobile were burning when it passed the car in which the Haires were riding within two or three hundred feet of the wagon. The evidence is such that therefrom it might be reasonably inferred that the automobile did not slow down before reaching the wagon, and that there was no other car on the road which could have crowded the defendant into the wagon. We have no evidence on the part of the defendant, and, if we are to indulge the imagination and conjure possibilities, there is practically no limit to which we may not go. If we may consider the possibility of the lights on the car going out, we may also consider the possibility of the driver's sight suddenly becoming impaired. If we are to consider the possibility of the brakes suddenly refusing to work, we may as well consider the possibility that the steering apparatus failed, or that the driver suddenly lost his power of control because of cramps in his legs or arms, or because of a sudden stroke of paralysis. If, before the plaintiff can make out a case, he must negative every possibility which might relieve the defendant from liability, it would be practically impossible to establish a case of negligence or recklessness against the driver of any automobile. Surely, this is not the law, and the rule that requires that plaintiff's evidence must be taken as true in the light most favorable to plaintiff and given the benefit of all reasonable inferences therefrom cannot be nullified by any such stringent rule as that for which the appellees contend. Under the evidence presented in this case, we think a jury might reasonably infer that, if the driver of the automobile used any care whatever in keeping a lookout ahead, he must have seen the wagon when he was a sufficient distance away from it that he could have easily slowed down or turned out and thus have avoided hitting it. If he did not see this wagon, which the evidence shows was visible for at least a quarter of a mile, he was certainly guilty of recklessness in using no care whatever; if he saw the wagon but did not see it until it was too late to avoid hitting it, then a jury might reasonably infer that his inability to avoid hitting it was due to the excessive speed at which he was driving which made it impossible for him to have his car under control and be able to avoid objects such as this wagon which he was bound to know might be ahead of him in the road.

Under such circumstances, a jury would be warranted in finding that he was not using any care, was acting with reckless indifference to the rights of others, and was therefore guilty of recklessness.

Under the rule announced in Wilkinson v. Queal Lumber Company, 208 Iowa 933, 226 N. W. 43, the trial court admitted as against the defendant-driver of the car, but not as against the defendant-owner, a statement alleged to have been made by such driver shortly after the accident in which, in response to a question by the owner of the wagon as to what was wrong with him, he said, "Just a little recklessness." While we do not mean to say that, in the statement alleged to have been made by him, the driver of the automobile had in mind the technical meaning of the word "recklessness", we think a jury would be justified at least in considering this statement, if made by him, as an admission that the accident was caused through his fault. The record is silent as to any further statement of the defendant driver. Ordinary experience and knowledge of human conduct show that people do not ordinarily admit responsibility for results as serious as the accident and injuries in this case without also referring to other matters, if any such there be, which might tend to excuse or mitigate their responsibility. As far as the appellee H. C. Center is concerned, therefore, we think that the alleged admission, if made by him, and the absence of any further explanation by him were proper matters for the consideration of the jury, along with the other facts and circumstances in evidence, in determining whether or not he was guilty of recklessness in the operation of the automobile.

II. The second ground of appellee's motion for a directed verdict, which the appellant contends the trial court erred in sustaining, was that in which the appellees claimed that the appellant, by riding a distance of forty-five miles without protesting or questioning the speed or manner of operation, acquiesced in the acts and conduct of the driver and assumed the risk connected with his operation of the automobile. Appellees cite in support of their contention the holding of this court in the case of White v. McVicker, 216 Iowa 90, 246 N. W. 385. It will be noted, however, that, in the opinion in that case and in the cases to which reference is made therein, the doctrine of assumption of risk is placed upon knowledge and acquiescence of the plaintiff. In the case at bar, no knowledge is shown on the part of the appellant of the acts which it is claimed constituted recklessness at the time of the collision.

The speed at which appellees' automobile was proceeding during the forty-five miles before the accident in and of itself would not constitute negligence, much less recklessness. There is nothing in the evidence to show that the appellant at any time before the accident had any knowledge of the speed of appellees' car or of the presence of the load of corn in the road; nor is there any evidence to show that appellant had any knowledge that the appellee driver was not keeping a lookout, or was not making any effort to avoid hitting the load of corn which was ahead of him in the road. Necessarily, therefore, he could not have acquiesced in the negligence of the appellee which it is charged caused the accident and injuries involved in this case. Appellees also cite the case of Brown v. Martin, 216 Iowa 1272, 248 N. W. 368. The question of assumption of risk was not involved in that case, and the language quoted by the appellees had reference to the facts in that particular case and had no reference whatever to the doctrine of assumption of risk. The evidence in the case before us does not show that appellant had any knowledge of or acquiesced in the acts of the driver which it is claimed caused the accident, and we cannot say, as a matter of law, that the appellant is debarred from recovery because he assumed the risk of the reckless acts of appellee upon which he seeks to recover.

III. Appellant finally contends that the trial court erred in sustaining that ground of appellees' motion for a directed verdict, based upon the claim that under the evidence adduced there was no liability of the defendant Homer O. Center, the owner of the automobile, for any injury or damages sustained by plaintiff as the result of the recklessness, if any, of the defendant H. C. Center in operating said automobile. The liability of the owner of an automobile for damages done by such automobile when driven with his consent is not founded upon any common-law liability, but is the result of statutory enactment. Section 5026, of the Code of 1924, which also appears in the Codes of 1927 and 1931, is as follows:

"5026. * * * In all cases where damage is done by any car driven by any person under fifteen years of age and in all cases where damage is done by the car, driven by consent of the owner, by reason of negligence of the driver, the owner of the car shall be liable for such damage."

This section was amended by chapter 119 of the Acts of the 42d General Assembly, and this amendment now appears as section 5026-b1, of the Code of 1931, and is as follows:

"5026-b1. * * * The owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in said motor vehicle as a guest or by invitation and not for hire, unless damage is caused as a result of the driver of said motor vehicle being under the influence of intoxicating liquor or because of the reckless operation by him of such motor vehicle."

It will be noted that, under the provisions of section 5026, "in all cases where damage is done by the car, driven by consent of the owner, by reason of *negligence* of the driver, the owner of the car shall be liable for such damage." (Italics are writer's.) It will be further noted that, under the provisions of section 5026-b1, the *owner* or operator of a car is not liable for damages to a guest riding by invitation and not for hire, unless the damage is caused "as a result of the driver of said motor vehicle being under the influence of intoxicating liquor or because of the *reckless* operation by him of such motor vehicle." (Italics are writer's.)

It is the contention of the appellees that under Code, section 5026, the only liability imposed upon the owner of a car where damage is done by a car driven by some other person with the owner's consent, is where such damage is the result of the *negligence* of the driver; that section 5026-b1 exempts the *owner* from any damage to a guest or passenger not for hire caused by the *negligence* of the driver of the car; and that neither section 5026-b1 nor any other statute imposes any liability on the *owner* of the car, to a guest, or passenger not for hire, because of the *reckless* operation of the car by one driving it with the owner's consent. So far as we can find, this is the first time that this precise proposition has been directly presented to this court. In the case of Hart v. Hinkley, 215 Iowa 915, 247 N. W. 258, referred to by the appellees, it is expressly stated that the right of the guest to recover under such circumstances was not challenged and that the case was tried on the theory that such liability exists.

An examination of section 5026-b1 readily discloses that the only effect of the amendment contained in this section upon the original provisions of section 5026 consists in relieving the owner or operator of liability to a guest or passenger not for hire, except

in two cases: First, where the damage is caused as the result of the driver of said motor vehicle being under the influence of intoxicating liquor; and, second, where the damage is caused because of the reckless operation by the driver of such motor vehicle. Here, we are not concerned with the intoxication of the driver, but only with his reckless operation of the motor vehicle. It will be noted that the amendment contained in section 5026-b1 refers to "the *owner* or o'perator". If it had been the intention of the legislature to relieve the owner of all liability for reckless operation of a car by another person, it could easily have expressed this intention. By providing that the *owner* or operator shall not be liable except in the two cases, to wit, where the driver is intoxicated, or where he is guilty of the reckless operation of the automobile, it would seem to be the intention of the legislature that the *owner* as well as the operator shall be liable in these two cases. Moreover, it does not follow that, because the driver of an automobile is guilty of recklessness, he is not guilty of negligence. In Siesseger v. Puth, 213 Iowa 164, at page 182, 239 N. W. 46, we said:

"In light of the circumstances under which said chapter 119 was passed, it is apparent, we think, that the legislature intended the word 'reckless' therein to mean 'proceeding without heed of or concern for consequences.' To be 'reckless', one must be more than 'negligent'. Recklessness may include 'willfulness' or 'wantonness', but if the conduct is more than negligent, it may be 'reckless' without being 'wilful' or 'wanton', but to be reckless in contemplation of the statute under consideration, one must be more than negligent. Recklessness implies 'no care, coupled with disregard for conse-quences'."

As above stated in Siesseger v. Puth, "to be 'reckless', one must be more than 'negligent'. * * * Recklessness implies 'no care, coupled with disregard for consequences'." Recklessness is, therefore, negligence and something more. It implies no care, and no care necessarily includes the absence of ordinary care. One who is guilty of negligence may not be guilty of recklessness; but one who is guilty of recklessness is also guilty of negligence. It follows, therefore, that under the provisions of sections 5026 and 5026-b1, so far as negligent acts are concerned, the owner is still liable for the negligence of the person driving his car with his consent, except in the case of guests or passengers not for hire; and

that he is still liable in the case of guests or passengers not for hire, if the damage is caused by the reckless operation of his automobile by one driving it with his consent.

We believe that the trial court erred in sustaining the appellees' motions for a directed verdict, and the judgment upon the verdict thus rendered is hereby reversed.—Reversed.

KINDIG, MITCHELL, ANDERSON, and KINTZINGER, JJ., concur.