OMAR MALAND, Administrator, Appellee, v. ARNOLD TESDALL et al., Appellants.

No. 45928.

AUGUST 11, 1942.

REHEARING DENIED NOVEMBER 27, 1942.

Emmert, James, Needham & Lindgren, of Des Moines, and Harry Langland, of Nevada, for appellants.

Doran, Doran & Doran, of Boone, and Ed. J. Kelley, of Ames, for appellee.

GARFIELD, J.—Decedent, Ellsworth Maland, was a young man of 21 who lived with his mother and brother on a farm near Huxley. The brother, as administrator, brought this action. Defendants are Burton Tesdall, the owner of the car, an implement dealer at Huxley, and his son Arnold, 21 years old. Arnold, with the consent of his father, was the driver of the car. Aside from the decedent, Ellsworth Maland, and the driver, Arnold Tesdall, the other occupants of the car were Archie Maland (cousin of Ellsworth), Obert Overland, and a 15-year-old girl, Phyllis Kirkendall, who was Ellsworth's girl friend. All these young people were good friends. The four other than Arnold were guests in the car.

The accident occurred about midnight of September 20, 1939, at the Jordan curve, on U. S. Highway 30, about ten miles west of Ames and four miles east of Boone. The car was being driven from Ames to Hill Top Inn, a so-called dine-and-dance place west of Boone. The general direction of the highway from Ames to Boone is west. At the Erickson corner, however, it turns to the north for something over a mile until it reaches the Jordan curve, where the highway makes a sweeping curve to the west into Boone. At this curve highway 60 from the north meets No. 30. One approaching the Jordan curve on U. S. 30 from the south would, by continuing straight north instead of turning left on the curve, travel on No. 60. From a point toward the north or west end of the curve, an intersecting road extends from No. 30 to the northeast to connect with No. 60 at a point roughly 400 feet north of its junction with No. 30 at the south or east end of the curve. This short intersecting road accom-

modates traffic from the west going north on No. 60 and from the north going west on combined highways 30 and 60.

There is a triangular plot of ground framed by the curve on No. 30 on the southwest, by No. 60 on the east, and by the intersecting road on the north. The surface of this triangular tract or ''Y'' is 5 to 7 feet lower than the surrounding highways.

The Tesdall car left the right side of the paving at about the beginning of the curve, skidded to the northwest in the gravel and ''blacktop'' for about 120 feet into a guardpost near the southeast corner of the ''Y'' above described. The first two guardposts, about ten feet apart, on the outside of the curve, were broken off completely. One witness testified the third post was also broken off—other witnesses that it was merely damaged. These guardposts were connected by two steel cables, each about an inch thick. After colliding with these guardposts, the Tesdall car turned a somersault in the air, then struck the ground, again went end-over-end, and again struck the ground, finally coming to rest on its top near a telephone pole some 254 feet from the point where it left the paving.

Decedent was thrown some 80 feet from where the car stopped. He had a fractured skull and died without regaining consciousness. Phyllis and Archie were each thrown about 100 feet from where the car came to rest. Overland was thrown into or near a mulberry tree some 75 feet from the car. All of these four passengers were thrown to the north of where the car stopped. Arnold Tesdall, the driver, lay underneath the gas tank of the car. One of the girl's slippers and the top of the car trunk were found on the intersecting road.

About 7:30 that evening Ellsworth and Arnold had left Huxley for Ames, where Phyllis lived. About nine, after riding around Ames, these three went to a skating rink where they met Obert Overland. Obert and Arnold skated for an hour and a half. There is evidence that Ellsworth stayed in the car with Phyllis at the skating rink. Obert had bought four pints of whisky that evening at a state liquor store. He had given one bottle to his brother and left two in his own car. The remaining bottle, about a third full, was found by the officers about 30 feet from the Tesdall car at the scene of the wreck.

Arnold, the driver, admitted he had a drink of "7Up," "spiked" with whisky, at the skating rink. Overland testified that Ellsworth, the decedent, spiked the "7Up" with a bottle that he, Ellsworth, had. Phyllis denied this and denied that Ellsworth had been drinking. After leaving the skating rink, the party visited two different cafes or beer parlors, although Ellsworth and Phyllis sat in the car while the other three young men went inside the second cafe visited. Arnold drank a small bottle of beer at the first of these two places. It was there that Archie Maland joined the party. After leaving the second of these two places the trip to Boone was undertaken.

This action was brought under the guest statute, section 5037.10, Code, 1939, claiming that Ellsworth's death was caused by the reckless operation of the Tesdall car and because Arnold, the driver, was under the influence of intoxicating liquor. At the close of the evidence, the court withdrew the issue of intoxication and submitted to the jury only that of reckless operation.

I. The first assigned error is the failure of the court to direct a verdict for appellants. The point most strenuously urged in this connection is that as a matter of law the sole proximate cause of the accident was a blowout of the right front tire of the Tesdall car. This was pleaded by appellants as an affirmative defense. The contention cannot be sustained.

The burden to prove this affirmative defense by a preponderance of the evidence rested upon appellants. Johnson v. McVicker, 216 Iowa 654, 658, 247 N. W. 488; Griffin v. Stuart, 222 Iowa 815, 825, 270 N. W. 442. In the absence of an admission by the adverse party, it is not often that a party having the burden upon such an issue establishes it as a matter of law. Low v. Ford Hopkins, 231 Iowa 251, 254, 1 N. W. 2d 95, 97.

It does not appear conclusively that there was a blowout in the right front tire at the time the car left the paved surface. The tire was a Goodrich tire which had been purchased in the spring. The owner of the car testified all the tires were in good condition. Arnold testified: "As I came to the curve * * * something pulled on the steering wheel something terrible * * * and I figured it was a blowout." It is conceded no damage was done to the casing or outer tire. There is evidence that the

next morning a "pinch blowout" was found along the bead or edge of the inner tube on the right front tire. All other tires and wheels had been stolen before the wrecked car had been towed in from the scene of the tragedy. Indeed there is testimony from at least two witnesses that all tires and wheels were stolen before the car was moved. Soon after the wreck Officer Jennings examined the car and testified the tires appeared all right.

But it is not certain that the blowout found in the tube the next morning occurred before or at the time the car left the paved surface. It might have occurred later, while the car was being wrecked. We have given careful consideration to the physical facts upon which appellants rely on this question of the blowout. They fall short of establishing the defense as a matter of law. Testimony of Phyllis Kirkendall that the car skidded around the last curve at the Erickson corner, a mile south of the Jordan curve, and weaved back and forth from then on, is inconsistent with appellants' affirmative defense. Testimony of the witness Goad is also to the same effect.

Even if it appeared conclusively that the blowout occurred at the time claimed by appellants when the car left the paving, still we cannot say as a matter of law that it was the sole proximate cause of the accident. If Arnold was reckless in one or both of the respects claimed and such recklessness concurred or combined with the blowout to cause the accident, the blowout would not constitute a defense. Johnson v. McVicker, 216 Iowa 654, 657, 274 N. W. 488, and citations.

McDonald v. Dodge, 231 Iowa 325, 1 N. W. 2d 280; Wright v. What Cheer Clay Prod. Corp., 221 Iowa 1292, 267 N. W. 92; Newville v. Weller, 217 Iowa 1144, 251 N. W. 21, and other cases cited by appellants on this branch of the case are clearly distinguishable on their facts.

II. It is claimed the evidence is insufficient to show reckless operation of the Tesdall car, but that, on the contrary, affirmative acts of care appear. Appellants rely upon Brown v. Martin, 216 Iowa 1272, 248 N. W. 368; Mayer v. Sheetz, 223 Iowa 582, 273 N. W. 138; McDonald v. Dodge, 231 Iowa 325, 1 N. W. 2d 280; Roberts v. Koons, 230 Iowa 92, 296 N. W.

811, and other decisions. We hold, however, that the issue of recklessness was for the jury.

Phyllis Kirkendall testified that Arnold, Archie, and Obert acted silly before the accident; that at the Erickson corner Arnold speeded up; that she and Ellsworth asked him to slow down; that the car skidded all the way around the last curve at Erickson; that after passing a truck the car went off the pavement and weaved back and forth; that it clipped something which the jury could find was one of the guardposts on the east side of the roadway. From about this point, the driver lost control of the car, as heretofore described. The girl also said she was frightened; that Ellsworth told Arnold as they approached the curve to slow down, that there was a curve ahead, that he was going over 80, too fast to make it, and would kill them all; that Arnold paid no attention to these warnings.

Much of the girl's testimony as to the manner in which the car was driven was corroborated by the witness Goad who claimed to be driving a truck north a short distance south of the Jordan curve when the car passed him at 70 miles per hour, weaving and rocking from side to side, zigzag, snakelike, as it started into the curve. A sign with reflector buttons indicating the curve was located about 300 feet south of where the curve begins.

There is testimony that Arnold admitted he was driving too fast to make the curve; that it was his fault; that he had drunk quite a bit.

Substantially all the above testimony was denied by Arnold, Archie, and Obert. But, of course, the conflict was for the jury. The above testimony, viewed in the light most favorable to appellee and in connection with the admitted physical facts surrounding the accident, was sufficient to warrant a finding of heedless disregard for, or indifference to, the rights and safety of decedent and the other passengers in the car. This is the test of reckless conduct. Some of the decisions that sustain our conclusion are: McKlveen v. Townley, 230 Iowa 688, 299 N. W. 25; Fraser v. Brannigan, 228 Iowa 572, 293 N. W. 50; White v. Center, 218 Iowa 1027, 254 N. W. 90; Hart v. Hinkley, 215 Iowa 915, 247 N. W. 258; Cerny v. Secor, 211 Iowa 1232, 234 N. W. 193.

III. It is urged that appellants were deprived of a fair trial, in some fifteen different instances. We will mention some of appellants' more serious complaints. Appellee offered evidence that Obert Overland was intoxicated immediately after the accident and was taken by deputy sheriffs to the city police station in Boone. Deputy Jennings was asked by appellee's counsel if he had any talk with Overland while he was being taken to Boone. Neither appellant was present at the time inquired about. Proper objection as hearsay was made and sustained. The following record was then made:

"Q. Did * * * Overland say anything * * * with reference to giving the driver of this car a drink between Boone and Ames? Mr. James: I object to that question. It is improper, * * * prejudicial * * * attempting to lead this witness * * *. Counsel knows it is very improper and prejudicial. Mr. Doran: If Your Honor please, I take exception to this boy remarking 'Counsel knows it.' * * * I have heard it three or four times in this trial. I object to the childish statements and ask that counsel frame his objections to exclude what I know, because he certainly does not know what I know. The Court: The objection will be sustained, Mr. James. Mr. James: I move to strike the question * * * for the above reasons. The Court: It may go out at this time."

The above question, especially coming as it did, immediately following the previous ruling, was clearly improper and should not have been asked. The evidence would have been admissible only for impeachment of the witness Overland, and then only if proper foundation had been laid by his testimony.

In this connection, it may be observed that there was no testimony that Overland gave whisky to the driver of the car during the trip from Ames. Appellee's witness, Phyllis Kirkendall, a passenger in the car, did not so testify. She was an interested witness because there was then pending a damage case against appellants for injuries to her.

Appellants also complain of the sarcastic manner in which their counsel was ridiculed by the above statement of appellee's counsel. The reference to "this boy" and "the childish statements" are not to be commended. There were

other instances of ridicule which should have been omitted. A trial should be a dignified presentation of issues, a good-faith effort to ascertain the truth upon which the rights of litigants depend, and not a display of ill will or ridicule. Whatever does not contribute to the proper purposes of the trial should be scrupulously avoided. Anderson v. High, 211 Minn. 227, 300 N. W. 597, 600; Rian v. Hegnauer, 210 Minn. 607, 299 N. W. 673, 674, 675.

After the above examination of Deputy Jennings, appellee directed and repeated, after objection was sustained, the following similar question to Deputy Busby:

"Q. Did you have any talk with Obert Overland about the bottle partially filled with whisky?

"Objection as hearsay sustained by the court."

This question should not have been asked, much less repeated. The court had already sustained objections to similar questions asked Jennings.

IV. A persistent effort was made by appellee throughout the trial to show over objection that Overland was arrested for intoxication and taken to the police station in Boone. The court permitted appellee to show by Deputy Jennings, over proper objection, that Overland was kept at the police station two or three hours. Appellee was also permitted to show on cross-examination of Overland that he was taken to the police station. The court overruled proper objection by appellants to appellee's question to Archie Maland, "You knew Obert had been arrested by the sheriff of Boone county, didn't you?"

Competent evidence to show that Overland was intoxicated immediately after the accident was proper. For one thing, such evidence bore upon his credibility as a witness for appellants. Under the circumstances here, it was also proper to show the use of liquor on the evening in question by the occupants of the car. Evidence tending to show that Overland was arrested for intoxication, however, was incompetent and should not have been received. State v. Voelpel, 213 Iowa 702, 707, 239 N. W. 677; Germinder v. Machinery Mut. Ins. Assn., 120 Iowa 614, 617, 94 N. W. 1108; State v. Millmeier, 102 Iowa 692, 695, 72 N. W. 275.

968

■ V. On cross-examination and over proper objection, appellee was permitted to ask the driver of the car, "Prior to that how long had you been drinking hard liquor?" The objection to this question should have been sustained.

VI. On direct examination Arnold testified: "We asked Phyllis if she wanted to go with us to Boone, and she said she wanted to go as long as Ellsworth was going." Ellsworth was Phyllis' boy friend.

On cross-examination this occurred:

"Q. Why was it that Phyllis didn't want to trust Ellsworth with you? Mr. James: I object to that as improper, argumentative, insinuating, and an attempt to prejudice the jury—* * *. The Court: Sustained. * * * [Question stricken for same reason.] * * *

"Q. What reason could Phyllis have for not wanting Ellsworth to go to Boone with you alone? [Same objections sustained by the Court and question stricken for same reasons.] * * * Q. Can you tell the jury why Phyllis would make this statement as long as Ellsworth was going with you, she wanted to be with Ellsworth? [Same objections made and sustained by the court.] Q. Anyway, Phyllis made that statement, didn't she? [Objection made and sustained.]"

The above examination was improper. The questions called for the state of mind of another person, which the witness could not possibly know. Furthermore, the questions insinuated an improper motive on the part of Arnold in driving decedent to Boone.

VII. Complaint is made of other somewhat similar matters which we do not discuss in detail. The foregoing are illustrative. Because of the matters complained of, appellants, prior to the submission of the case, moved that the jury be discharged and a mistrial declared. The motion was overruled. These complaints were also urged in support of the motion to direct and for a new trial after the verdict.

While it was proper for appellee to show the use of liquor by the driver and the other occupants of the car on the night of the accident, we think the bounds of propriety were exceeded.

A prejudicial course of examination was pursued. Incompetent questions which assumed the existence of damaging facts were frequently asked. The questions and not the answers seem to have been considered important. Such questions were repeated despite the sustaining of objections thereto. See 39 Am. Jur. 80, 81, section 65. As bearing generally on some of the matters discussed herein, see Annotations 4 A. L. R. 414 and 78 A. L. R. 1438. We feel the conduct of counsel for appellee above referred to was the result of zeal for his client's cause, and not any intentional wrongdoing.

VIII. It is contended the trial court should have granted a new trial because of newly discovered evidence. This argument is based on the claim that the testimony of appellee's witness Goad was almost wholly perjured; that in truth Goad did not see the accident and knew practically nothing about it; was not driving a truck north on highway 30 approaching the Jordan curve, and did not stop at the scene of the accident that night. Attached to the motion for new trial are three affidavits. One is by Phillips, a driver for the Kist truck lines by whom Goad was employed at the time; another by Kist, owner of the truck lines; and the other by Mr. James, appellants' counsel. Phillips' affidavit recites that he, not Goad, is the driver who stopped at the scene of the accident that night; that Goad had attempted to persuade Phillips to testify falsely and had admitted that he, Goad, did not stop at the scene of the accident that night and did not see it. Kist's affidavit recites that Goad admitted to him, soon after the trial, that he had testified falsely. James' affidavit bears principally on the question of due diligence in not sooner discovering the claimed falsity of Goad's testimony.

It is conceded that Goad, whom the jury doubtless believed was a disinterested witness, is related by marriage to appellee's decedent. Goad's deceased wife was a sister of one Gumtau who was married to a sister of decedent, Ellsworth Maland. It also appears that soon after the trial Goad went to California and was not located for some five months, when he appeared in this state and made a long affidavit confessing in detail that substantially his whole testimony was perjured. This affidavit is

the basis for an amendment to the motion for new trial filed after the appeal was taken to this court. Appellee moved to strike this amendment on the ground that it came too late and after the district court had lost jurisdiction by reason of the appeal. Appellee also filed in resistance to the amendment the affidavits of Mr. L. H. Doran, appellee's counsel, vigorously denying any knowledge of any falsity in Goad's testimony, and of Gumtau, reciting that Goad had told in his presence substantially the same story to which he testified upon the trial. Following the overruling of the amendment to the motion for new trial, a second notice of appeal was served upon appellee.

We gather from appellee's argument that upon the subsequent trial of the case brought on behalf of Phyllis Kirkendall against these same appellants, Goad testified for appellants that he passed, but did not stop at, the scene of the accident that night, coming from the west on combined highways 30 and 60 and not from the south on highway 30, and that he first stopped at the scene of the accident the next morning. According to this testimony, Goad had practically no knowledge of the matters to which he testified upon the trial of the instant case. Deputy Jennings testified upon the instant trial that he saw Goad at the scene of the accident on the night it happened.

While our attention is repeatedly called to the affidavit of Gumtau and the testimony of Jennings, appellee, in effect, seems to have repudiated the testimony of Goad. At least Goad is not defended. Rather, appellee tells us that since the trial it has been discovered that Goad is a thief and a criminal, guilty of habitual drunkenness and immorality. His mental soundness is questioned.

 IX. In view of the matters mentioned in divisions III to VIII, especially VIII, we are agreed that a new trial should be granted.

It is elementary that a trial judge has considerable discretion in ruling on a motion for new trial. However, this court will interfere more readily where the trial court refuses to grant a new trial than where it grants one. White v. Zell, 224 Iowa 359, 365, 276 N. W. 76; Dobberstein v. Emmet County, 176 Iowa 96, 105, 155 N. W. 815.

A new trial will not ordinarily be granted because of newly

discovered evidence which is merely impeaching or cumulative in character. Danner v. Cooper, 215 Iowa 1354, 1360, 246 N. W. 223; Simons v. Harris, 215 Iowa 479, 482, 245 N. W. 875; Witt v. Town of Latimer, 139 Iowa 273, 282, 117 N. W. 680; 39 Am. Jur. 173, 176, sections 167, 170. The testimony relied upon by appellants, however, is neither strictly impeaching nor cumulative, although it does tend to contradict the testimony given by Goad upon the trial and is consistent with the testimony of appellants' witnesses. Bates v. Carter, 222 Iowa 1263, 1267, 271 N. W. 307; Sheridan Bros. v. Dealy, 198 Iowa 877, 200 N. W. 335; Dobberstein v. Emmet County, 176 Iowa 96, 104, 155 N. W. 815; Powell v. Commonwealth, 133 Va. 741, 112 S. E. 657, 33 A. L. R. 541.

In the light of the position subsequently taken by appellee, appellants made a fairly strong showing in connection with their motion for new trial that Goad's testimony was almost wholly perjured. Goad was an important witness for appellee. He was offered as a wholly disinterested witness who observed the manner in which appellants' car was driven at the time of the accident. The other important witness for appellee was Phyllis Kirkendall. She was vitally interested in the result of the trial. Appellants' main witnesses were the driver and two other occupants of the car, who were close friends. The jury would naturally accord great weight to the testimony of Goad. In automobile cases, testimony of the disinterested observer is often decisive of the issue. We cannot fairly conclude that the jury would have come to the same conclusion without Goad's testimony, even though Phyllis testified to many of the same matters.

It is frequently said that a new trial will not ordinarily be granted because of perjured testimony. 39 Am. Jur. 175, section 169; Annotations 33 A. L. R. 550 and 74 A. L. R. 757. Nevertheless, a new trial may be granted where it clearly appears that the prevailing party offered perjured testimony upon material matters, and the court cannot say that the same conclusion would probably have been reached without such evidence. Moore v. Goldberg, 205 Iowa 346, 217 N. W. 877; Sheridan Bros. v. Dealy, 198 Iowa 877, 200 N. W. 335; Mitchell v. Beck, 178 Iowa 786, 811, 156 N. W. 428, 160 N. W. 232; Guth v. Bell,

972

153 Iowa 511, 521, 133 N. W. 883, 42 L. R. A., N. S., 692, Ann. Cas. 1913E, 142; Powell v. Commonwealth, 133 Va. 741, 112 S. E. 657, 33 A. L. R. 541; 39 Am. Jur. 175, section 169; 46 C. J. 230, section 186. See, also, Wilbur v. Iowa P. & L. Co., 223 Iowa 1349, 275 N. W. 43; Dobberstein v. Emmet County, 176 Iowa 96, 155 N. W. 815; Cleslie v. Frerichs, 95 Iowa 83, 63 N. W. 581; First Nat. Bk. v. Wabash, St. L. & P. Ry., 61 Iowa 700, 17 N. W. 48.

We have said that a different situation exists where the question of perjured testimony is raised by motion for new trial rather than by petition filed under chapter 552, Code, 1939. Moore v. Goldberg, 205 Iowa 346, 348, 217 N. W. 877.

A new trial will not be granted because of newly discovered evidence unless diligence is shown in discovering and producing it. Section 11550(7) Code, 1939; Eller v. Paul Revere L. Ins. Co., 230 Iowa 1255, 1262, 300 N. W. 535, and citations. Without reviewing the showing of diligence here, we think it was sufficient. See Wilbur v. Iowa P. & L. Co., 223 Iowa 1349, 275 N. W. 43.

Nothing herein is intended to cast any reflection on the integrity or professional standing of appellee's counsel.

X. Several other matters are assigned as error. They are not likely to occur upon another trial, so we do not discuss them. We may say, however, that instruction X is, to say the least, ineptly stated and confusing.

The judgment is—Reversed.

All JUSTICES concur.