ANON B. THORNBURY, administrator of estate of JOAN ELIZABETH
THORNBURY, appellee, v. IRENE H. MALEY, administratrix of
estate of WALTER MALEY, appellant.

No. 47750.

(Reported in 45 N.W.2d 576)

Bryant & Bryant, of Mason City, and Hoffmann & Hoff-mann, of Des Moines, for appellant.

George D. Dunn, of Mason City, for appellee.

WENNERSTRUM, C. J.—The plaintiff, administrator of the estate of Joan Elizabeth Thornbury, deceased, brought an action against the administratrix of the estate of Walter Maley, deceased, for damages resulting from the death of the plaintiff's intestate. It is claimed her death resulted from the reckless driving of a 1942 Buick automobile owned by Walter Maley, now deceased, and driven by Thomas Maley, his son. Young Maley was killed at the same time that the plaintiff's intestate met her death. A·verdict of $11,250 was returned in favor of the plaintiff-administrator. A motion for new trial was overruled and the defendant-administratrix has appealed.

The accident which resulted in the death of the two young people occurred about one o'clock on the morning of June 14, 1948, on Highway 18 between the town of Ventura and the city of Clear Lake, Iowa. Thomas Maley was driving the car and Joan Thornbury was in the front seat with him. Hanford O'Leary and Joan Tracy were in the back seat of the Maley car. These young people had met earlier in the evening of June 13 and, according to the testimony, had driven to Mason City for the purpose of attending a picture show. Because of a waiting crowd and the contemplated delay in getting into the theater, they drove around for a while and then went to a golf driving range between Mason City and Clear Lake. Previously they had purchased twelve cans of beer at a filling station north of Mason City. They later drove to McIntosh State Park where they spent some time. There a portion of the beer was consumed by members of the party. They then started to return to a lake cottage where one of the members of the party lived. The accident

occurred where there is a sharp curve in the road approximately one-half mile east of McIntosh State Park. There was a large road sign indicating where the road turns. The automobile failed to make this turn and struck trees some distance from the paved highway.

Evidence was introduced that showed the extent of the damage to the car and also injuries to the trees struck by it. Evidence was also presented which showed skid marks of an automobile just off the pavement and in the direction in which the Maley car had traveled from the pavement until it struck the trees. These skid marks were shown to continue for about fifteen feet from the paved highway. From the end of the skid marks to where the car stopped, the distance was between fifty and seventy feet. Alvin Ray Martin, a witness for the appellee, testified that he was fishing in Clear Lake approximately seven hundred feet offshore, that he heard the roar of an automobile, observed lights on it and then heard the crash. This witness gave an estimate of the speed at which the automobile was being driven, stating that it was his opinion that it was traveling at a speed of seventy-five or eighty miles per hour at the time of the accident. Another witness, who was at the scene of the accident a short time after it occurred, testified that he observed the speedometer of the wrecked automobile and that, although somewhat crushed, it was stuck at eighty miles per hour. A witness, who is a service manager for a Buick dealer in Des Moines, testified that an impact on the dash would lock the needle at the speed at which the car was then going. It should be further stated that in connection with the appellee's case, evidence was presented showing that the examination of the blood samples taken from the body of Thomas Maley by the coroner disclosed that there were 101 milligrams of alcohol per 100 cubic centimeters of blood. The doctor, who made the analysis of the blood, testified that the judgment of a person would be impaired with this amount of alcohol in his system.

Appellee's intestate was sixteen years of age and a sophomore in high school at the time of her death. She had taken training as a tap dancer and had earned some money from this source. It was also shown that she had taken care of children at nights in different homes, was a good cook, a good student, loved sports,

had been a member of the Girl Scouts and played the French horn in the band. She also had acted, as baton twirler in connection with her band activities. It was stipulated that her life expectancy was 45.66 years.

I. Speed alone does not amount to recklessness. McDonald v. Dodge, 231 Iowa 325, 331, 1 N.W.2d 280; Reed v. Pape, 226 Iowa 170, 177, 284 N.W. 106; Claussen v. Estate of Johnson, 224 Iowa 990, 997, 998, 278 N.W. 297, 301. However, in the last cited case we stated as follows:

"Undoubtedly there is a point where, because of attendant circumstances, minds of reasonable persons would differ and a jury question would arise on the question whether a speed in excess of 80 miles per hour would be 'proceeding without heed of or concern for consequences,' exhibiting 'no care, coupled with disregard for consequences.' Siesseger v. Puth, 213 Iowa 164, 182, 239 N.W. 46, 54."

The question whether a particular speed is dangerous depends upon the surroundings and the attendant circumstances. Cerny v. Secor, 211 Iowa 1232, 1237, 234 N.W. 193; McQuillen v. Meyers, 213 Iowa 1366, 1368, 1369, 241 N.W. 442; Reed v. Pape, supra; Mescher v. Brogan, 223 Iowa 573, 581, 272 N.W. 645.

II. The appellant contends that the verdict of the jury is not sustained by the evidence. We cannot so hold. It is definitely shown that there were skid marks near the highway and pointing in the direction where the automobile came to rest; that the car hit a large tree some ninety feet from where the skid marks commenced and between fifty and seventy feet from where they ended and that the bark was completely peeled off a small tree that was about four feet from the large tree. There was testimony that the door handle on one side had pierced the bark of one of the trees. It is also undenied that the curve at the place of the accident was a sharp one.

Our statement in Hart v. Hinkley, 215 Iowa 915, 918, 247 N.W. 258, 259, is applicable to the facts in the present case. We there stated:

"Something more is shown in this case than mere speed. Seventy miles per hour in the nighttime upon a graveled high-

way would be more or less hazardous at the best. When considered in the light of the surroundings and circumstances shown in this case, we think the evidence quite sufficient to sustain the verdict against the driver of the automobile. The course of the highway, as it approached the bridge, necessitated an abrupt turn to the right and a more or less abrupt turn to the left after making the crossing, which is a circumstance to be considered. It is obvious from the testimony that the driver of the automobile lost control thereof because the speed at which he was driving was so great that he was unable to maintain control of the car and guide it across the bridge and make the necessary turn to the left. It may be that the speed of the car was less than seventy miles per hour, but when considered in the light of the facts and circumstances, was so great as to constitute reckless operation within the meaning of the statute."

See also Maland v. Tesdall, 232 Iowa 959, 965, 5 N.W.2d 327; Mescher v. Brogan, 223 Iowa 573, 579, 272 N.W. 654. We hold there was ample evidence justifying the submission of the question of the claimed recklessness of the driver to the jury.

III. The claimed speed of the Maley car is of importance in this case because of the testimony to which reference has heretofore been made. Particular complaint is made because of the admission of certain testimony of the witness, Alvin Ray Martin. The record in this connection is as follows:

"Q. Mr. Martin, do you have an opinion as to how fast that car was traveling from your observation and your hearing? Mr. Hoffmann: That is objected to as calling for an opinion and conclusion of the witness and purely speculative. The Court: He may answer whether he has such an opinion or whether he has not. A. Yes, I have an opinion. Q. What is that opinion? A. I would say - - - The Court: Wait a minute. Mr. Hoffmann: Same objection urged to the preceding question. The Court: Overruled. You may answer. A. My opinion was between 75 and 80." Cross-examination: "* * * I was facing toward shore, would not say there were no other cars passed there between 9 o'clock and midnight, our attention was attracted to this particular car by the roar. We immediately

looked up and kept it under observation until just about the time it hit. We watched it for a couple of minutes, could see the headlights of this car when I first looked up, the headlights were coming toward us. Q. And you claim to be able to judge the speed of an automobile by observing the headlights coming towards you? A. Well, with the sound of the motor and tires you can form your own opinion as to how fast a heavy motor is going. Q. Do you pretend to be able to tell this just how fast a car is traveling with the headlights coming toward you and hearing the sound of the motor? A. I would say that my opinion on the speed at which the car was traveling would be fairly accurate. I formed it on my own observation. I am familiar with the highway 18 that skirts the north shore of Clear Lake. The curve is a very sharp curve. The pavement is not smooth, it is not really terribly rough, just an average pavement."

Attention is called to the fact that the one objection that is made does not raise the question whether the witness is qualified to testify relative to the speed of an automobile under the situation here shown. In the case of Lane v. Varlamos, 213 Iowa 795, 799, 800, 239 N.W. 689, a witness testified relative to the speed of an automobile. It was contended on appeal in that case that a proper foundation had not been laid. However, it was pointed out that on the trial the objection had been that the question called for the incompetent conclusion of the witness. We there held, as we do here, that in the absence of a proper objection the witness could answer and express an opinion concerning speed. The weight of the evidence was for the jury. Owens v. Iowa County, 186 Iowa 408, 411, 169 N.W. 388. It was also held in Cedergren v. Hadaway, 91 N. H. 270, 271, 18 A.2d 380, 381, that the testimony of a witness, who testified regarding excessive speed of an automobile and who had only a brief time to observe, was competent and the limited time for observation affects only the weight of the testimony. (Citing Bissonnette v. Cheverette, 87 N. H. 211, 176 A. 285.) See also Albert v. Maher Bros. Transfer Co., 215 Iowa 197, 207, 243 N.W. 561; Blashfield, section 6239.

It is also stated in 32 C. J. S., Evidence, section 499, page 160, as follows: "A witness is not rendered incompetent to

testify as to speed by reason of the fact that his judgment is based on knowledge gained through feeling or hearing, rather than on sight." A witness who only has the opportunity of observing the light beams of an approaching vehicle is competent to estimate speed and the probative value of the testimony is for the jury. Perkins v. Chicago, M. & St. P. Ry. Co., 158 Minn. 184, 187, 197 N.W. 758, 760. See also Pemberton v. Fritts, 56 S. D. 374, 228 N.W. 409, 410, 411.

We hold that there was no error in the admission of the evidence which it is claimed on this appeal was improperly received. It should also be kept in mind that on cross-examination the witness amply qualified himself under questioning of appellant's counsel.

■ IV. The appellant submits as a further claimed error the admission of the testimony of certain officers and highway patrolmen relative to skid marks near the scene of the accident and just off the pavement. These witnesses testified without objection many times relative to their observations of these marks. On only one occasion was there an objection made to any testimony concerning the marks. The witness, Howard S. Miller, stated that in his opinion the marks were from the rubber of an automobile. He was then questioned if these marks were extended out whether they would point to anything in particular. This was objected to as calling for the opinion and conclusion of the witness. The court permitted him to answer and he stated: "They pointed to the smaller of the two trees that were on the lake shore * * *." There was no error in this ruling. Later, during the cross-examination of the witness, counsel for appellant made a motion to strike the testimony of the witness relative to his observations as being immaterial to any issue in the case. The court overruled the motion and the witness gave further testimony regarding his observations. None of the witnesses was asked to give any testimony concerning the speed of the car based upon their observation of the skid marks.

■ A witness may describe the marks that he has observed near the place of an accident. The inference to be drawn from the testimony regarding skid marks is solely the province of the jury. Ward v. Zerzanek, 227 Iowa 918, 924, 289 N.W. 443.

See also McKeever v. Batcheler, 219 Iowa 93, 98, 257 N.W. 567, and cases cited; also Nelson v. Hedin, 184 Iowa 657, 659, 169 N.W. 37. In the light of the record we find no merit in this claimed error.

■■ V. The appellant also asserts as a claimed error the striking and dismissing of the defense of assumption of risk pleaded by appellant. The court held there was no evidence produced to which this doctrine could apply. It is the appellant's complaint that this issue should have been submitted to the jury. It is our conclusion that the court was correct in the ruling made.

Assumption of risk is defined and discussed at some length in the following cases: White v. McVicker, 216 Iowa 90, 246 N.W. 385; Stingley v. Crawford, 219 Iowa 509, 258 N.W. 316; Edwards v. Kirk, 227 Iowa 684, 288 N.W. 875. Briefly stated, this plea or doctrine is applicable where one is placed in a position where he has a choice of doing or not doing a given act. This defense is a proper and applicable one if pleaded and proven.

In the instant case it is the appellant's theory that Joan Elizabeth Thornbury assumed the risk attendant to the manner in which the automobile was driven. Intoxication was not pleaded, but the appellee presented testimony relative to the drinking of the young people in the car that evening. It is the appellant's claim in her brief and argument that Joan Thornbury had sufficient knowledge of the condition of the driver of the Maley car and that she assumed the risk of proceeding to ride with him. Joan Tracy, one of the surviving occupants of the car, testified that Tom Maley was not intoxicated. Hanford O'Leary testified that he did not know whether young Maley was drunk or sober. There is no testimony by either of these witnesses relative to the speed of the car or the condition of the driver prior to the accident other than as has been heretofore stated. Under the evidence we do not see where the appellee's decedent had any knowledge of Maley's claimed intoxication. There was no showing that she had any time for deliberation at or immediately prior to the accident and could there assert a choice relative to continuing in the car. Edwards v. Kirk, 227 Iowa 684, 692, 288

N.W. 875, 879; Shatto v. Grabin, 233 Iowa 46, 51, 52, 6 N.W.2d 149.

VI. The appellant contends that the verdict and judgment was excessive and the result of passion and prejudice.

Section 613.11, 1950 Code provides, in part, as follows: "In any action for damages because of. the wrongful or negligent injury or death of a woman, there shall be no disabilities or restrictions, and recovery may be had on account thereof in the same manner as in cases of damage because of the wrongful or negligent injury or death of a man."

Pursuant to the foregoing Code section the factors to be considered in connection with a claim for damages for the death of a woman are the same as a man. There can be no fixed rule regarding the amount of recovery in the case of a woman of the age of the decedent. Raines v. Wilson (1931); 213 Iowa 1251, 1263, 1264, 239 N.W. 36. In this last cited case a verdict for $3500 for the wrongful death of a girl six and one-half years of age was held not excessive. In the case of Ellis v. Republic Oil Co. (1906), 133 Iowa 11, 21, 110 N.W. 20, 24, this court stated in connection with an action for damages for death of a girl as follows:

"Indeed, it would seem that $3,000 is a fairly modest esti-mate to put upon the present value of the life of any person of average health, intelligence, and capacity who is cut off at 15 years of age. Nor does the fact that the intestate was a girl, instead of a boy, afford any reason for discounting this proposi-tion in these days when the services of women in the school, office, and shop, as well as in the household, find market every-where at remunerative figures. The court can fix no rigid or inflexible rule or standard by which to assess such damages. They must be reasonable, but what is reasonable is a question for the jury, and the court should not set it aside unless the verdict be so excessive as to shock its sense of justice."

See also. Crawford v. McElhinney, 171 Iowa 606, 624, 154 N.W. 310, Ann. Cas. 1917E 221, where a verdict of $3000 for death of a girl eight years of age was held not to be excessive; also Lawrence v. Sioux City (1915), 172 Iowa 320, 329, 154 N.W. 494, where verdict of $5000 for death of an eighteen-year-

old girl was held not excessive. In Hart v. Hinkley (1933), 215 Iowa 915, 918, 919, 247 N.W. 258, a verdict of $15,000 was reduced by the trial court to $10,000 and by this court to $7500. In this last cited case the deceased was a seventeen-year-old high school boy.

Although we have set out some of our prior holdings in regard to the claimed excessiveness of a verdict, yet it must be admitted that comparison of verdicts approved by this court is not a satisfactory method of determining the reasonableness of an award. DeToskey v. Ruan Transport Corp., 241 Iowa 45, 50, 40 N.W.2d 4, 7. A verdict should not be disturbed unless it is so flagrantly excessive as to raise a presumption that it was the result of passion, prejudice, or undue influence. Collins v. City of Council Bluffs, 32 Iowa 324, 331, 332, 7 Am. Rep. 200. There is no showing of prejudice and passion and consequently we cannot conclude that we would be justified in so holding in the instant case because of the verdict itself.

We find no reason upon which to base a reversal and, there-fore, affirm.—Affirmed.

OLIVER, GARFIELD, SMITH, MULRONEY, and HAYS, JJ., concur.

MANTZ, J., not sitting.