Lloyd **WINKLER**, Administrator of the Estate of Ronald Dughman, Deceased, Appellee,

v.

Larry D. **PATTEN** and Doraldine A. Edstrom, Appellants.

No. 53773.

Supreme Court of Iowa.

March 4, 1970.

Betty, Neuman, McMahon, Hellstrom & Bittner, by Thomas F. Daley, Jr., and Monty E. Stratton, Davenport, for appellants.

Dircks, Berger & Saylor, by A. Fred Berger, Jr., Davenport, for appellee.

SNELL, Justice.

This case arose under the Iowa Guest Statute. Recklessness on the part of the driver was alleged. There was evidence of considerable beer drinking prior to the accident but no allegation of intoxication. Defendants pleaded assumption of the risk.

In a one-car accident at about 1 a.m. on September 26, 1966, three of the passengers, including plaintiff's decedent, were thrown from the car and killed. There had been six young men and one girl in the car. The four who survived the crash, including defendant-driver, "took off running." At the trial of this case defendant-driver and one of the passengers testified. The other two of the survivors could not be found for service of subpoena.

The administrator of the estate of Ronald Dughman brought this action against Larry D. Patten, the driver and Doraldine A. Edstrom, the owner of the car involved. For convenience the driver will be referred to as the defendant.

During the evening of September 25th defendant, plaintiff's decedent and Sterling Adams met at a pool hall in Davenport. They decided to go for a ride in plaintiff's decedent's car. The other passengers were separately added to the group. After about one-half hour of driving around and drinking some beer they ran out of gas and beer. They then switched to defendant's car and drove to Rock Island where defendant purchased more beer. They returned to Iowa and drove to a quarry area west of Davenport near Buffalo, Iowa. They stopped, sat around on the car fenders, talked and drank the beer. After finishing the beer the group started back to Davenport.

Defendant testified that he had driven the road before and was "reasonably familiar" with the highway. He was also "reasonably familiar" with the fact that the highway narrows from a four-lane highway into a two-lane highway and was generally aware of the intersection where this accident took place. He testified that he did not know the speed limit at the location of the accident.

As they approached the scene of the accident, the group was engaged in a general conversation. Adams testified that no one made any protests about the driving of the defendant or about the speed of the automobile.

Defendant also testified that there were no complaints. He estimated his speed at 60 to 65 miles per hour. As he approached the point where the highway narrows and becomes a two-lane highway, he took his eyes completely off the road and looked at somebody in the back seat. He said he took his eyes completely off the road while traveling 65 miles per hour for "a few seconds, if that long." At about the same time as he started to turn his head around to the front, the car started to slide and he hit the brakes. In an effort to bring the

car back under control, he testified he let up on the brakes and turned the wheels to the left but that this had no effect whatsoever and the car did not appear to slow down. The driver knew they were approaching a curve in the road and an intersection. The car skidded 336 feet, hit a stop sign (on an intersecting road), then skidded 51 feet where it hit a utility pole guy wire and then traveled off the road 150 feet tearing up sod until it struck a small building and stopped. Three bodies, including plaintiff's decedent, were scattered around 15 feet or more from the car. One witness said the bodies were 30 to 35 feet from the car. There was testimony that the car skidded on its wheels and did not roll.

The speed limit at the site of the accident was 35 miles per hour.

Police officers investigated, took measurements and drew a plat of the road and site of the accident with measurements shown. Pictures were taken.

Based on tests, measurements and calculations that are not challenged the minimum possible speed of the car was 75 miles per hour. There was some testimony that the speed might have been higher.

The trial court submitted to the jury the question of defendant's recklessness and defendant's affirmative defense of assumption of risk.

The jury returned a verdict for plaintiff in the sum of $2,500. The amount is small in a death case.

During submission of this appeal appellee's counsel stated that he had difficulty in establishing a measure of damage in a large amount because of decedent's poor work record.

In overruling defendant's motions for judgment notwithstanding the verdict and for new trial the trial court said:

"The evidence discloses facts from which the jury could reasonably find that defendant had been travelling at a high and excessive rate of speed for several miles, the last part of which was in excess of. 85 miles per hour in a 35-mile zone, and was travelling at such speed when he entered the curve which he failed to negotiate, that he was familiar with the road or street in this area and made no effort to reduce his speed until he had entered the curve. While his turning his head to look into the rear of the car might of itself have been nothing more than a case of momentary thoughtlessness, his action in doing so while travelling at a high rate of speed and approaching a curve which he knew was there and which could not safely be negotiated at such speed is evidence of proceeding without heed of or concern for consequences and with a heedless disregard for and indifference to the rights of others. From all of the above the jury could reasonably find recklessness on the part of defendant."

Except that the record before us does not show the evidence of speed in excess of 85 miles per hour, we agree. The record before us shows calculations to a minimum of 75 miles per hour and a statement by Adams on cross-examination that the speed could have been 75 to 80. The evidence of higher speed may have been omitted from our record.

Appellant says the questions on appeal are:

"1. The sufficiency of the evidence of recklessness to support a verdict.

"2. Whether or not the decedent assumed the risk of his injury and death as a matter of law.

"3. The correctness of the Court's instruction defining recklessness."

I. Since the enactment of our guest statute there have been frequent statements and articles that its purpose was to protect the "Good Samaritan" against liability incident to an act of kindness. It has also been claimed that it protects insurers against collusion.

■ Regardless of the purpose it is the duty of the court to define recklessness. It is then the duty of the jury to determine whether the facts in a given case are within that definition. Possibly because of natural reactions to disclosures that were viewed with a jaundiced eye juries have found more and more situations to be within the definition of recklessness.

Although there has been some reluctance, at least on the part of some members, our court has applied a very loose rein on such findings and in most cases has affirmed the verdict.

Whether this tendency is good or bad we need not discuss.

In Lewis v. Baker, 251 Iowa 1173, 1176, 104 N.W.2d 575, 577 in discussing the guest statute, we said:

"It is not for us to say whether there was recklessness, but only whether reasonable minds, such as in theory at least are found in our juries, might so conclude. We shall not attempt to analyze or discuss the many cases in which we have dealt with the problem; to do so would require an extensive treatise prohibited by limitations of time and space. It is sufficient to say that among the numerous decisions facts and language can be found which adept counsel can cite in support of either side of almost any case arising under the statute."

On page 1178 of 251, 104 N.W.2d on page 578 Iowa this appears:

"We have often said that speed alone is not sufficient evidence of recklessness to engender a jury question. [Citations]. But the statement is so hedged about with qualifications that it means little. Whether excessive speed may amount to recklessness depends upon the attendant circumstances; and there are always attendant circumstances. These arise from the condition and width of the highway, of the light conditions, whether the road is straight or curved, the presence or absence of other traffic, and innumerable other facts which arise in and vary from case to case. From these things, coupled with speed, the courts must determine the issue. Speed does not operate in a vacuum; there are always other conditions surrounding it."

■ The jury's findings are binding on us if supported by substantial evidence and we give the evidence the most favorable construction it will reasonably bear in support thereof. Rules 344(f), pars. 1 and 2, Rules of Civil Procedure, Wilcox v. Hilligas, 254 Iowa 204, 117 N.W.2d 42, and Shoop v. Hubbard, 259 Iowa 1362, 1363, 147 N.W.2d 51. We may not substitute our opinion of the evidence for that of the jury.

We have such a situation in the case before us. The record is scant. Three people who were involved are dead. Two others could not be found. Defendant and a friend testified rather indecisively. The record consists mostly of deductions and computations plus a few admissions and known facts.

■ In the case before us there was evidence of speed more than twice the speed limit. There were other conditions under which a jury might reasonably find such speed was reckless.

We agree with the trial court that there was a jury question and evidence to support the verdict.

II. Defendant pleaded assumption of risk as an affirmative defense. By proper instruction, not challenged, the court submitted the question to the jury. By returning a general verdict for plaintiff the jury found against defendant on this affirmative defense.

■ Defendant urges but does not argue too strenuously that assumption of risk was established as a matter of law. Defendant points out that the difficulty in establishing assumption of risk is co-extensive with plaintiff's difficulty in establishing recklessness. Assuming, arguendo, that to be true the jury found against defendant on

both issues. It requires a far stronger case to establish an allegation as a matter of law than to show substantial evidence to support a jury finding.

■ The burden to establish such a defense by a preponderance of the evidence rested upon defendants. In the absence of an admission by the adverse party it is not often that a party having such a burden establishes it as a matter of law. Maland v. Tesdall, 232 Iowa 959, 5 N.W.2d 327, Reeves v. Beekman, 256 Iowa 263, 127 N.W.2d 95.

The evidence established that all of the people involved had been drinking beer together. It may be that there was a diminution of normal inhibitions against risk, but we cannot say that the evidence of beer drinking in this case established any of the issues here as a matter of law. Just how much beer must be consumed to meet such a test we need not consider. There is neither claim nor evidence of intoxication of defendant or plaintiff's decedent.

■ Assumption of risk depends on knowledge of the risk assumed. Bohnsack v. Driftmier, 243 Iowa 383, 52 N.W.2d 79.

■ Plaintiff's decedent was seated in the rear seat behind the driver. Three others were in the same seat. There is no claim that plaintiff's decedent had any knowledge that defendant was approaching a curve and intersection while driving at an excessive speed or would look around to talk to someone in the rear seat.

There was no assumption of risk as a matter of law.

III. The trial court defined recklessness. The following is quoted from the instruction.

"Conduct arising from momentary thoughtlessness, inadvertence, or from error of judgment, does not indicate a reckless disregard of the rights of others and does not constitute recklessness within the meaning of the law.

"The elements of recklessness are:

"1. No care coupled with a disregard for consequences.

"2. There must be evidence of defendant's knowledge, actual or chargeable, of danger, and proceeding without any heed of or concern for consequences, and

"3. The consequences of the actions of the driver are such that the occurrence of injury is a probability rather than a possibility."

Defendant by timely filing requested an instruction that the first element was "No care coupled with a disregard for consequences and a persistent course of conduct."

Defendant claims error in refusing to include the requirement of "a persistent course of conduct."

Appellant does not claim that the definition of recklessness was incorrect. It is claimed that it was incomplete in that a necessary element was omitted i. e. a persistent course of conduct.

In the dissenting opinion in Vipond v. Jergensen (4 justices dissenting), 260 Iowa 646, 665, 148 N.W.2d 598, 609, this appears:

"The requirement of persistence seems to be relatively recent in our cases. The phraseology seems to have been based on Wilcox v. Hilligas (1962), 254 Iowa 204, 210, 117 N.W.2d 42, where this court decided as a matter of law that kissing while driving could not be deemed reckless driving."

The Wilcox case says:

"Reckless conduct, like negligent conduct, starts at some point of time. What we are concerned with is evidence from which the inference of reckless conduct may properly be drawn. With few exceptions we have required evidence of a persistent course of conduct to show no care coupled with disregard of consequences, the primary element of recklessness. This

is true because if it were not so required we would be allowing an inference of recklessness from every negligent act. We cannot say the result was so obvious the conduct of defendant amounted to no care or that injury was the probable result." (loc. cit. 210 of 254 Iowa, loc. cit. 45 of 117 N.W.2d)

The factual situation in the case at bar is not comparable to the Wilcox case. In Wilcox there was not even a violation of any speed laws. There was nothing except evidence that defendant driver was kissing his girlfriend and the car left the roadway. We said:

"This is perhaps negligent conduct so far as the operation of the vehicle is concerned, but from the record presented we hold there is not a permissible inference of reckless operation." (loc. cit. 210 of 254 Iowa, loc. cit. 45 of 117 N.W.2d).

In the case before us there were estimates of a nighttime speed of at least 75 miles per hour in a 35 mile zone and looking away from the road while entering a curve the driver knew was there.

It is of course true that a persistent course of conduct may show "no care coupled with disregard of consequences." Such a showing is important in getting beyond the restriction in the instruction that "conduct arising from momentary thoughtlessness, inadvertence, or from error of judgment" does not show recklessness.

■ Showing of a persistent course of conduct is a matter of evidence ordinarily shown to establish recklessness. It is not in itself an essential element. It is in most instances merely a helpful yardstick or guide by which to determine recklessness as opposed to negligence.

■ From the fact that showing a persistent course of conduct is an important and very helpful matter in proving recklessness, it does not follow that it must be included as an essential element in a definition of recklessness. Acts indicating recklessness may occur within too short a time to come within the ordinary understanding of the word persistence and still show no care and a disregard of natural consequences.

The court properly refused to include "a persistent course of conduct" as an essential element in the definition of recklessness.

The case is

Affirmed.

All Justices concur.