Carlos SAUER, Appellant,

v.

Thomas L. SCOTT, Appellee.

No. 53373.

Supreme Court of Iowa.

April 7, 1970.

Rehearing Denied June 22, 1970.

John D. Randall and John R. Hughes, Cedar Rapids, for appellant.

Wayne C. Collins, Cedar Rapids, and Keith Mossman, Vinton, for appellee.

BECKER, Justice.

Plaintiff brings action for personal injuries received while a passenger in defendant's automobile. In Division I he alleges he was not a guest and predicates his action on negligence; in Division II he alleges he was a guest and predicates his action on recklessness and in Division III he alleges he was a guest and predicates his action on defendant operating a motor vehicle while under the influence of intoxicating liquor. At the close of plaintiff's evidence the court directed the verdict on Division III but submitted the allegations of Divisions I and II to the jury. The jury found for defendant and plaintiff's motion for a new trial was overruled. We reverse and remand for retrial.

Plaintiff Sauer, defendant Scott and one Oliver Gravemann all worked for the same truck line. Additionally, Sauer intended to drive a truck for Scott when it was delivered. He could make more money that way. Gravemann's wife was expecting a child and the men agreed to celebrate when the baby was born.

In a discovery deposition, defendant Scott testified he left his home some time after 8:00 p. m., December 10, 1965, drove around for awhile and then went to the Tip Top Tavern where he found Mr. Gravemann. Scott had two vodka sours and then telephoned Mr. Sauer. Plaintiff's wife took the call. When Scott asked to talk to plaintiff, Mrs. Sauer twice said, "No." Defendant then said, "God dam it, I want to talk to him." Mrs. Sauer handed the phone to her husband. Scott asked Sauer to come to the Tip Top Tavern and he, plaintiff, said, "No." Scott called Oliver Gravemann to the phone and Gravemann said, "Either come down or I am coming up." Sauer could tell from Gravemann's voice that Gravemann had been drinking and he thought Gravemann would come to the house. Therefore he dressed and went down to the tavern. After the conversation the defendant Scott played pool with Gravemann, had three more vodka sours and a double shot of brandy.

Plaintiff Sauer came in while the men were playing pool and sat in a booth. He had a quart of beer, part of which Gravemann drank, and a bottle of beer that he drank himself. Plaintiff knew defendant had two or three vodka sours and a double shot of brandy while playing pool. Gravemann became obviously intoxicated but defendant appeared to be all right. Defendant asked Sauer to drive the Scott car to Dysart where Gravemann lived while he, Scott, drove Gravemann and his car to the Gravemann home. Plaintiff Sauer took Scott's car and went to Dysart, met Scott at the Gravemann home and left there as a passenger in Scott's car.

Before leaving the Gravemann vehicle, defendant told plaintiff to get a bottle of

whiskey and some 7-Up out of the Grave-mann car and they would have a drink on the way back to Vinton. Plaintiff complied, poured the whiskey into a 7-Up bottle for Scott and fixed a similar drink for himself. This happened shortly after 11:00 p. m. The two then returned to Vinton, drove around town for awhile and stopped at a Standard Oil service station at about midnight.

While at the service station they were joined by a Mrs. Reiferstahl. At this time defendant noticed the heat indicator on his car was red. He opened the hood and looked at the motor but did nothing to it. He closed the hood, got in the car and asked plaintiff to ride along with him to see if the car would quit heating up. Defendant, with Mrs. Reiferstahl and plaintiff as passengers, drove to the near-by town of Mt. Auburn.

When they left the station the drink plaintiff had mixed for defendant had not been finished. Defendant had one more drink from it and Mrs. Reifenstahl finished the drink. Defendant did not appear to be intoxicated at any time and plaintiff "thought he was all right." The weather was foggy as they drove to Mt. Auburn. On the return trip it continued foggy. At the first curve out of Mt. Auburn plaintiff asked defendant to slow up: " * * * 'I didn't care for that speed in that kind of weather' * * *. At that time it was getting real dense. I don't know which beams, high or low, Tom had on."

Plaintiff doesn't know whether or not defendant actually slowed his speed. The fog got denser to where "you couldn't see the edge of the road". Plaintiff again told defendant to slow down. Again he doesn't know if defendant actually slowed down but remembers defendant saying, "We are not going to make it." Plaintiff's next recollection was coming to his senses in the hospital in Iowa City.

Mrs. Reifenstahl testified the car was going 30 to 40 miles per hour in dense fog immediately prior to the accident. De-fendant said, "We are going to hit the ditch." Plaintiff opened the door on the right side and left the car. She left the car with him but does not know if plaintiff pulled her out or if she was thrown out.

The sheriff was called to the scene at about 1:15 a. m. The weather was real foggy and he drove at 25 miles per hour which he considered really too fast. From his observation of tire marks on the shoulder he opined the car left the highway on a curve, traveled some distance on the shoulder (later determined to be "about" 150 to 200 feet) came back onto the highway and went into a spin, traveled in the ditch ("about" 75 to 100 feet), hit a cross-road and stopped. Two other cars went into the ditch at or near the same location that night. Plaintiff was seriously injured but the nature and extent of his injuries are not pertinent to this appeal.

### STATUS

I. Plaintiff complains of undue restriction placed upon him by the court in connection with his argument to the jury as to plaintiff's status as a guest or passenger. The prejudicial effect of such errors depends on the first instance on whether the evidence generated a jury case predicated on the issue.

The trial court indicated he doubted there was sufficient evidence to carry the case to the jury on the theory plaintiff was not a guest but submitted the question as recommended in Florke v. Peterson, 245 Iowa 1031, 65 N.W.2d 372. The court stated the matter would be reconsidered on post verdict motion. Under the entire record we hold the court was correct in submitting the issue of guest versus passenger to the jury but had the jury found plaintiff to be a passenger the finding would have had to be set aside. In considering such an issue we view the evidence in the light most favorable to the party against whom the motion to direct the verdict was taken. Rule 344(f) (2), Rules of Civil Procedure. Portions of the

foregoing factual recitation are the subject of dispute. In those areas we have accepted the interpretation most favorable to plaintiff.

■ There is a rebuttable presumption a passenger is a guest. Plaintiff has the burden to prove the guest statute is not applicable. It is clear plaintiff did not pay for the ride, was not acting as servant of the operator or owner and was not a co-employee in furtherance of common employment as directed by a common employer. Plaintiff must rely on a claim his presence was for a definite and tangible benefit to the owner or operator or a mutual, definite and tangible benefit to plaintiff on one hand and to defendant on the other. Jackson v. Brown (Iowa) 164 N.W.2d 824, 826; Ross v. McNeal (Iowa) 171 N.W.2d 515, 517. The rules in this field have been oft repeated. It is the application of the rules to the facts that causes the difficulty. Even when the facts are not in dispute, if reasonable minds might draw different inferences from them, a jury question is engendered. Rule 344(f) (17), R.C.P.

■ The evidence here is not sufficient to generate a jury question. Plaintiff's petition states: " * * * [T]he trip was for the sole benefit of defendant and plaintiff accompanied him to assist him in any manner necessary to correct the difficulty with defendant's automobile." Plaintiff's only testimony on the issue was: "The purpose of the trip to Mt. Auburn was to see what was really wrong with that car, if it was just from idling or heating up of it; to see what was wrong with it. * * *." His intended function was not explained. Defendant and Mrs. Reifenstahl both testified defendant did not request plaintiff to go along but simply announced he was going and why. Taking plaintiff's testimony in its best light there is no showing by evidence, direct or circumstantial, that plaintiff's status was any different than it had been all evening; i. e., a friend socializing with another friend.

■ The trial court prohibited plaintiff's attorney from arguing the circumstances of the early part of the evening. We agree the relationship during the entire evening was relevant but this error cannot help plaintiff here. There is nothing in the early evening activities to indicate motivation other than companionship. There is no testimony tying the evening project to the men's common employer or employment and no evidence of any tangible beneficial purpose (other than socializing) to take plaintiff out of the guest statute. In this circumstance we hold the restrictions placed on plaintiff's attorney in argument on this issue constituted harmless error.

## DRIVING WHILE UNDER THE INFLUENCE OF INTOXI-CATING LIQUOR

■ II. As a guest plaintiff must show damage caused by recklessness or by operation of the car while under the influence of intoxicating liquor. On the intoxicating liquor division the court directed a verdict for defendant. This was error.

Throughout his testimony plaintiff stated defendant did not appear to be intoxicated, did not have any difficulty in driving. The trial court ruled: "The plaintiff testified that he did not consider defendant was intoxicated; that nothing that he did in his driving worried him, and, 'I thought it was all right.' There is nothing to show that if the defendant were under the influence of intoxicating liquor at the time of the mishap that it was a proximate cause of the collision.

"Under the authority of the case of Reeves v. Beekman [256 Iowa 263]—127 North Western 2nd, Page 95 at Page 99, it is said:

" 'Defendant was either intoxicated or she was not. If not, there is no cause of action. Under the uncontroverted evidence if she was intoxicated it must have been obvious to plaintiff who was with defendant for at least four hours and who furnished part of the beverage. Therefore

the doctrine of assumption of risk would apply, and as a matter of law, plaintiff assumed the risk of riding with a drunken driver. In either event there can be no recovery.'" Reeves v. Beekman will be noted infra at Division V.

Outward manifestation of the effects of alcohol is not the only way to show a person is under the influence of intoxicating liquor. Defendant had two vodka sours before plaintiff got to the pool hall, 3 more after plaintiff arrived and two ounces of brandy before leaving to take Gravemann home. He also had a large part of a whiskey and 7-Up mixed by plaintiff in Vinton. The bartender testified the vodka was 80 proof and the brandy was 70 proof. This evidence coupled with the testimony of Dr. Regis Weland, a qualified pathologist, was sufficient to create a jury question on the issue of whether the "damage is caused as a result of the driver of said motor vehicle being under the influence of intoxicating liquor".

Under the circumstances shown here the question of causation was also for the jury. Rule 344(f) (10), R.C.P.

III. Certain rulings of the court during the course of direct examination of the pathologist are the subjects for assigned error. Full consideration of the various complaints and the issues thus raised would unduly lengthen this opinion. Suffice to say at least part of the complaints have merit.

We have recently noted in Dougherty v. Boyken, Iowa, 155 N.W.2d 488, 491: "The admission or exclusion of expert opinion testimony rests largely in the judgment of the trial court. Its ruling will be reversed only upon a clear showing of abuse of discretion. (Authorities cited).

"However, despite Professor Wigmore's argument that the trial court's ruling should not be subject to review, such discretion is not unlimited. (Authorities cited).

"The discretion exercised by the trial court must be a legal one based on sound

judicial reasons. 'Abuse of discretion' means simply no discretion to do what was done. (Authorities cited)."

During the course of the examination it appeared Dr. Weland, a qualified pathologist, who has read and followed the literature on the subject, stated: "We are frequently asked to take samples of body fluids; the common ones are blood and urine; and determine the alcohol content, either to determine the patient's clinical condition, or in some instances, to determine the effects this might have on the person's actions, such as driving an automobile. * * *.

"* * * We conducted a series of experiments in our own county for the purpose of determining the accuracy of one of these breath analyzers. So, we gave jail prisoners known amount of alcohol, measure breath, blood, urine, and notice the effects on them as far as muscular coordination, their reactions.

"Q. That's as far as it went? A. Yes, I haven't had vast experience as far as I would want to write about it, but certainly we have done it before. Q. But, the bulk of your information has come from others? A. Yes, much of it."

On this basis defendant objected to the doctor's testimony because there was no foundation to show the "witness is any more competent than anybody else to testify as to the effects of alcohol on the operation of a motor vehicle". This objection was sustained insofar as the testimony "may refer to the effect upon the operation of a motor vehicle". Later objections to questions directed to the same subject were sustained on the same grounds. The trial court exceeded its discretion when it barred the proffered evidence. Dr. Weland's qualifications based on study and experience qualified him not only in the general field of medicine but in the particular field of effect of consumption of alcohol on the human body and its effect on driving. The principles relating to qualification of witnesses to

express opinions are carefully analyzed at II Wigmore on Evidence, Third Ed., §§ 555–562, 569; Dougherty v. Boyken, supra, and authorities cited therein.

We find it unnecessary to pass on complaints centered on the exclusion of expert opinion testimony based on hypothetical questions. The record may well be different on retrial and the question of whether the proper foundation was laid will arise, if at all, in a different context.

IV. Plaintiff argues that the court interpreted "under the influence of intoxicating liquor" to mean "intoxication". This occurred in connection with direction of a verdict on plaintiff's intoxicating liquor division.

In Division II of this opinion we hold there was a question of fact for the jury under the statute as written. The manner of submission of the issue to the jury is not before us. We note Iowa Uniform Instructions 2.12 and 5.11 use the terms of the statute. We need not explore the difference, if any, between the terms "intoxication" and "under the influence of intoxicating liquor". Cf. State v. Stout, 247 Iowa 453, 457, 74 N.W.2d 208, 210, for consideration of the matter under Code section 321.281 as it existed before House File 207, Sixty-third General Assembly, effective July 1, 1969. The amendment is not applicable here.

## ASSUMPTION OF RISK— INTOXICATION

V. In directing a verdict on the intoxication division the trial court also noted substantial evidence plaintiff assumed the risk. It felt assumption of risk had been proved as a matter of law and gave that as a further reason for its action. We do not agree.

 Assumption of risk is an affirmative defense. It must be pled and proved by the party asserting it. Lamaak v. Brown, 259 Iowa 1324, 147 N.W.2d 915. Only in rare cases can it be said one having the burden of proof on an issue has proved the affirmative of the issue as a matter of law. Clubb v. Osborn, 260 Iowa 223, 149 N.W.2d 318; Augusta v. Jensen, 241 Iowa 697, 42 N.W.2d 383. In this case plaintiff was with defendant over a period of about four hours. He knew defendant had either 4 or 5 drinks during that time but he did not know how much defendant had prior to their getting together. He mixed the final drink at defendant's request. On the other hand plaintiff testified defendant appeared to be all right. No one testified he acted unusual or showed the effects of his drinking. In Augusta v. Jensen, supra, we said: " * * * But, under a record where all of the testimony shows the driver was not obviously intoxicated, and the guest testified he did not appear to her to be under the influence of intoxicating liquor, the question of assumption of risk would be for the court in a case where the jury is waived. Wittrock v. Newcom, supra [224 Iowa 925, 277 N.W. 286]; White v. Zell, 224 Iowa 359, 276 N.W. 76." (loc. cit. 241 Iowa pp. 700–701, 42 N.W.2d p. 385).

There are two lines of cases in Iowa on this subject. Under the peculiar facts of some cases we have held assumption of risk to be proved as a matter of law where plaintiff and defendant were drinking together before the accident. Christopherson v. Christensen, 258 Iowa 648, 140 N.W.2d 146; Reeves v. Beekman, 256 Iowa 263, 127 N.W.2d 95; Garrity v. Mangan, 232 Iowa 1188, 6 N.W.2d 292.[1] In other cases we have held the matter was one to be decided by the jury, White v. Zell, 224 Iowa 359, 276 N.W. 76 (new trial on the issue was granted); Augusta v. Jensen, supra, (drinking at a dance and later from a pint bottle of whiskey mixed with 7-Up); Booth v. General Mills, Inc., 243 Iowa 206,

1. Wheat v. Patterson (N.D.1967) 154 N.W.2d 367, 376, examines the three cited cases, notes the court did not find defendant intoxicated in any of them and states the assumption of risk discussion was dicta.

49 N.W.2d 561 (case must be read with comparison case Agans v. General Mills, Inc., 242 Iowa 978, 48 N.W.2d 242); Thornbury v. Maley, 242 Iowa 70, 45 N.W. 2d 576 (drinking an issue in recklessness case, court properly refused to submit assumption risk); Evans v. Holsinger, 242 Iowa 990, 48 N.W.2d 250, 28 A.L.R.2d 1434 (both parties drinking, assumption of risk properly submitted to jury); Berge v. Harris (Iowa) 170 N.W.2d 621 (plaintiff knew defendant had been drinking, but didn't know how much); Winkler v. Patten (Iowa) 175 N.W.2d 126, opinion filed March 4, 1970.

Bohnsack v. Driftmier, 243 Iowa 383, 52 N.W.2d 79, contains the most thorough analysis of the problem of assumption of risk by the guest where the host driver has been drinking intoxicating liquors and the guest knows this fact. The evidence as to amount of liquor consumed was substantial. The parties were together several hours; there was ample evidence defendant was driving while under the influence of liquor. In considering the assumption of risk instruction given in Bohnsack v. Driftmier, we said:

" * * * The jury was told it is the law that where one voluntarily becomes a guest in an automobile when he knows *or should have known* the driver is under the influence of liquor, he is deemed to assume the risk of an accident and injury and cannot recover against the driver. Later, in applying the law to the facts of the case instruction 5 states that if decedent knew defendant was intoxicated, or if a reasonable man under like circumstances would have known such fact, plaintiff cannot recover." (loc. cit. 243 Iowa at page 390, 52 N.W.2d at page 83). The case was reversed. We said in part:

"Mere lack of care, without more, does not amount to assumption of risk. The doctrine involves a choice between a course known to be dangerous and one that is not. * * *.

"It cannot logically be held that one has deliberately chosen a dangerous course of which he is ignorant merely because he should have known of it. The effect of instruction 5 here is to enlarge the doctrine of assumed risk to include conduct which amounts merely to contributory negligence notwithstanding our repeated decisions that contributory negligence is not an issue or a defense in actions under our guest statute. * * *

"Defendant argues, in effect, that if instruction 5 was error in the respect claimed it was without prejudice to plaintiff because, it is said, plaintiff's decedent assumed the risk of defendant's intoxication as a matter of law. But we think this defense was for the jury.

"While, as stated, there is ample evidence and it is admitted defendant was intoxicated when the men left Sheffield, there is also substantial testimony he appeared not to be intoxicated and to be able to drive his car. * * *." (loc. cit. 243 Iowa 392, 393, 394, 52 N.W.2d 84–85).

In Berge v. Harris (Iowa) 170 N.W.2d 621, 624, we said: "Evidence that defendant did not appear to be intoxicated was important in holding a jury question on assumption of risk was engendered. (Five Iowa cases cited). * * *."

In Jones v. O'Bryon, 254 Iowa 31, 116 N.W.2d 461, 465, we approved an interpretation of the Bohnsack v. Driftmier case to require actual knowledge before a risk can be held to have been assumed.

We conclude the defense of assumption of risk under the present record was for the jury.

## RECKLESS OPERATION

VI. Plaintiff complains of the court's action in telling the jury it had removed all the question of intoxication as an issue or a ground for recovery and, further, of the court's action in sustaining objection to plaintiff's counsel's attempt to talk about intoxicating liquor in final argument to

the jury.[2] The divisions submitted were negligence and recklessness.

We have consistently considered evidence of drinking as a material circumstance in connection with the issue of recklessness. Berge v. Harris, supra; Christopherson v. Christensen, supra; Maland v. Tesdall, 232 Iowa 959, 967, 5 N.W.2d 327; Bohnsack v. Driftmier, supra; Thornbury v. Maley, supra; Shoop v. Hubbard, 259 Iowa 1362, 147 N.W.2d 51; Martin v. Cafer, 258 Iowa 176, 138 N.W.2d 71.

 The manner of ruling on the directed verdict in the jury's presence and the instruction regarding withdrawal of the intoxication issue was no doubt considered necessary in light of the directed verdict. If such action was necessary it should have been explained and should not have removed the evidence from jury consideration on the recklessness issue. Defendant's complaints as to the manner of ruling on the motion before the jury and subsequent treatment of the intoxication issue have merit but are moot except insofar as plaintiff's right to argue the points before the jury is concerned.

The evidence of weather conditions, speed of the car under the circumstances and plaintiff's requests to slow down made a submissible issue of recklessness. The evidence of consumption of intoxicating liquor was germane to the issue. Thus plaintiff's counsel should have been allowed to discuss such evidence.

VII. Other errors assigned need only be briefly noted. Plaintiff's objections to instruction 20 included an objection to the inclusion of persistent course of conduct as a necessary element of recklessness without sufficient explanation. On retrial the court will have the benefit of what has been said in Winkler v. Patten (Iowa) 175 N.W.2d 126, opinion filed March 4, 1970. The problem is not likely to reoccur.

Plaintiff's complaint as to undue restriction on his damage argument and submission of interrogatories regarding the status of plaintiff are both now moot in light of our remand for retrial. They are also unlikely to reoccur.

VIII. Ordinarily, when a retrial is ordered, the parties are entitled to retry all of the issues. We see no reason to deviate from the general rule in this case.

Motion for new trial should have been granted. Reversed and remanded.

All Justices concur, except UHLENHOPP, J., who takes no part.

---

2. (Plaintiff's counsel): "You heard Dr. Weland's testimony as to the effect of alcohol on the person—

"MR. COLLINS: I would object to that, Your Honor, as being improper argument. Division 3 is not in this law suit any more.

"THE COURT: That is sustained. And matters concerning the defendant being under the influence of intoxicating alcohol or incidents that might lead up to such a condition are not for the consideration of the jury, having been withdrawn from the jury by virtue of the direction of the verdict as to Division 3."